948 F.2d 203
 A.J. GREGORY, Jr. et al., Plaintiffs,
v.
TENNESSEE GAS PIPELINE COMPANY, Defendant.
The CITY OF NATCHITOCHES, LOUISIANA, Defendant/Third-Party
Plaintiff-Appellant,
v.
TITAN INDEMNITY COMPANY, Third-Party Defendant-Appellee.
 No. 91-4245.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 12, 1991.
 
 Michael Osborne, Osborne, McComiskey & Gobert, New Orleans, La., Ronald E. Corkern, Jr., and Daniel T. Murchison, Watson, Murchison, Crews, Arthur & Corkern, Natchitoches, La., for defendant/third-party plaintiff-appellant.
 Joseph J. Bailey, and Ronald J. Fiorenza, Provosty, Sadler & Delaunay, Alexandria, La., for Titan.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before CLARK, Chief Judge, WILLIAMS and BARKSDALE, Circuit Judges.
 CLARK, Chief Judge:
 
 I.
 
 1
 The City of Natchitoches, Louisiana (City), appeals the district court's grant of summary judgment in favor of Titan Indemnity Company in the City's third party action seeking a declaratory judgment of coverage under a commercial general liability insurance policy. We affirm.
 
 II. Background
 
 2
 The City created Sibley Lake Reservoir (the lake) in the late 1950's to provide a recreational facility and a drinking water supply for the City. The lake was created by impounding Rio Honde, a navigable waterway of the United States. The City admits it owns the bed of the lake, but denies ownership of the bed of the Rio Honde within the bed of the lake. It also denies ownership of the waters, fish, flora, or fauna of the lake. The City does maintain the water level of the lake for its drinking water supply.
 
 
 3
 Tennessee Gas Pipeline Company (Tennessee Gas) maintains a facility adjacent to the lake and has discharge permits from the U.S. Army Corps of Engineers (Corps) and the state Department of Environmental Quality (DEQ). Tennessee Gas allegedly discharged polychlorinated biphenyls (PCBs) into the lake. Numerous riparian owners brought suit in state court against Tennessee Gas, as well as the City and Waterworks District # 1.
 
 
 4
 Although the complaints differ in their particulars, they generally allege that the City constructed the lake and that the City owns and controls the lake. Plaintiffs assert that the discharge from Tennessee Gas's facility contaminated the soil, water, flora, and fauna of the lake, that plaintiffs have been repeatedly exposed to PCBs and other hazardous and toxic substances in the contaminated soil, water, fish, flora and fauna of the lake and that plaintiffs have suffered or will likely suffer adverse health effects as a result. Plaintiffs further allege that the contamination has caused a diminution in value of their lakefront property. A few of the plaintiffs have also alleged a loss of business income.
 
 
 5
 Plaintiffs claim that the City is liable on several grounds. First, the City is strictly liable as the proprietor of an estate of its neighbors. La.Civ.Code art. 667. Second, the City is liable as the owner or custodian of a defective and unreasonably dangerous thing. La.Civ.Code art. 2317. Third, the City knew or should have known of the PCB contamination and was negligent in failing to detect the contamination, to warn plaintiffs of the contamination risks or to clean the lake.
 
 
 6
 The City filed a third party complaint against Titan Indemnity Company (Titan), alleging that Titan owed it coverage and the duty to defend it against the actions under the terms of a commercial general liability policy issued by Titan. Titan removed the entire action to federal court. The district court retained jurisdiction over all indemnity issues and remanded plaintiffs' cases to state court.
 
 
 7
 The district court granted Titan's motion for summary judgment, finding that the policy does not cover the claims made by plaintiffs or obligate Titan to defend the City against plaintiffs' actions. The City appeals.
 
 III. Standard of Review
 
 8
 This court reviews the issues presented on appeal from summary judgment de novo. Trial v. Atchinson, T. & S.F.R. Co., 896 F.2d 120, 122 (5th Cir.1990). To warrant summary judgment the evidence must show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).
 
 
 9
 Louisiana insurance law governs our interpretation of the insurance policy. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Porter v. American Optical Corp., 641 F.2d 1128, 1141-45 (5th Cir.), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). An insurer's duty to defend is broader than its liability for damage claims. Bell v. Sediment Removers, Inc., 479 So.2d 1078, 1082 (La.Ct.App.1985), cert. denied, 481 So.2d 1350 (La.1986). The pleadings alone determine whether the claims absolve the insurer of the duty to defend. C.L. Morris, Inc. v. Southern American Ins. Co., 550 So.2d 828, 830-831 (La.Ct.App.1989); Aetna Ins. Co. v. Grady White Boats, Inc., 432 So.2d 1082, 1086 (La.Ct.App.1983). An insurer owes a duty to defend unless the claims made against the insured are clearly excluded from coverage in the policy. C.L. Morris, 550 So.2d at 830-31. The insurer must defend the insured if the complaint discloses even a possibility of liability under the policy. Jensen v. Snellings, 841 F.2d 600, 612 (5th Cir.1988). If only one claim falls within the duty to defend then the insurer must defend the entire case and the court should liberally construe the complaints to determine whether any one claim triggers the duty to defend. Id.; Armstrong v. Land & Marine Applicators, Inc., 463 So.2d 1327, 1331 (La.Ct.App.1984). In the instant case the complaints do not allege any claim which involves Titan's duty to defend.
 
 IV. The Policy
 
 10
 In its declarations the policy states the following applicable limits of insurance:
 
 
 11
 General aggregate limit $ No aggregate
 --------------
(other than products-completed operations)
Products-completed operations $ No aggregate
 --------------
Personal and advertising injury $500,000
 --------------
Each occurrence limit $500,000
 --------------
 
 
 12
 In Coverage A of the insuring agreement, Titan agrees to pay those sums the City becomes legally obligated to pay as damages because of bodily injury or property damage occurring during the term of the policy. Such injury or damage must be caused by an occurrence. The issue as to bodily injury or property damage coverage turns on policy language which excludes:
 
 
 13
 damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
 
 
 14
 (a) At or from premises you own, rent or occupy; ....
 
 
 15
 * * * * * *
 
 
 16
 Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.
 
 
 17
 Other exclusions in this part of the policy deny coverage for property damage to the City's own property. They also expressly deal with bodily injury and property damage coverage for the products-completed operations hazard. The products-completed operations hazard is defined to include all bodily injury and property damage occurring away from premises the City owns and arising out of its product or work, except products still in its physical possession or work not yet completed.
 
 
 18
 Coverage B describes the personal and advertising injury liability assumed. It provides indemnity for damages the City becomes legally obligated to pay because of "personal injury" caused by an offense committed which arises out of the conduct of City business, or because of injury caused by an offense committed in the course of advertising the City's products or services. Personal injury is defined as:
 
 
 19
 injury, other than bodily injury, arising out of one or more of the following offenses:
 
 
 20
 a. False arrest, detention or imprisonment;
 
 
 21
 b. Malicious prosecution;
 
 
 22
 c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;
 
 
 23
 d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
 
 
 24
 e. Oral or written publication of material that violates a person's right of privacy.
 
 
 25
 V. Bodily Injury and Property Damage Coverage: The
 
 Pollution Exclusion
 A. Contentions of the Parties
 
 26
 Titan claims that the pollution exclusion in the policy applies to the plaintiffs' claims. Titan asserts that the complaints charge that all alleged damages consist of bodily injury or property damage which were incurred because of the City's ownership or occupancy of the lake and, therefore, the pollution exclusion absolves Titan of any duty to defend.
 
 
 27
 The City argues that it does not own or occupy the lake and that the pollution did not occur at or from any premises owned, rented or occupied by the City. We disagree.
 
 
 28
 B. "At or From Premises"
 
 
 29
 The City contends that the alleged discharge of pollutants does not occur "at or from" the lake but, instead, occurs at the Tennessee Gas facility and from the Tennessee Gas pipe above the waters. This contention is sophistry. The complaints assert that plaintiffs were injured by the presence of PCBs in the lake. But for the presence of PCBs in the lake, the alleged diminution of property value or loss of business income could not have occurred. Plaintiffs' only allegation is that use of the lake caused their bodily injury and property damage. The claims against the City arise solely from pollutants at or from the lake.
 
 
 30
 C. "Own, Rent or Occupy"
 
 
 31
 The City's principal contention in its argument that the pollution exception does not apply is based on its denial that it owns the lake, and the fish, flora and fauna associated with the lake. The district court stated that even if the City did not own the lake, it clearly occupied the waters and therefore the pollution exclusion applied. We agree that the City occupies the lake for the purposes of the pollution exclusion. The City relies on case law involving contamination of water supplies above and below real property owned by the insured. The courts in those cases held that the groundwater and surface water were not owned by the insured and therefore a similar pollution exclusion did not apply. See United States Aviex Co. v. Travelers Ins. Co., 125 Mich.App. 579, 336 N.W.2d 838 (1983); Reihl v. Travelers Ins. Co., 22 E.R.C. 1544 (W.D.Pa.1984), rev'd on other grounds, 772 F.2d 19 (3rd Cir.1985). Because the City in this case occupies the lake, the waters of which caused plaintiffs' damages, these cases are not pertinent. We need not determine ownership of the lake. Occupancy triggers the pollution exception.
 
 
 32
 The City is authorized by statute to use the lake as a waterworks system. La.Rev.Stat.Ann. § 33:4162. The City created the lake in order to provide a drinking water supply for the City and the City continues to maintain water levels in order to regulate that supply. The City argues that its action of regulating the waters does not constitute occupation by the City any more than the licensing actions by the Corps or the DEQ. Without regard to whether the Corps or the DEQ also occupy the lake, any such occupancy would not detract from the fact that the City occupies it. It created the lake, owns at least a large portion of the bed, and maintains and uses the lake and its waters for a drinking water supply. To occupy something is to hold or keep for use. See BLACK'S LAW DICTIONARY 1231 (4th ed. 1968). The City holds or maintains the lake for use as a water supply and recreational facility.
 
 
 33
 The City also asserts that even if it does occupy the waters of the lake, it does not own, rent, or occupy the soil, fish, flora or fauna of the lake. Therefore, it urges that the allegations of the complaints asserting injury resulting from ingestion of the fish from the lake are not within the pollution exclusion. We disagree. The pollution is alleged to be contained in the waters of the lake. It is alleged that through contact with the lake's water the soil, fish, flora and fauna became contaminated. It is not possible for the City to occupy the lake and regulate the water within it and not by the same acts put that water in contact with the soil, fish, flora and fauna of the lake. The contamination of the soil, fish, flora and fauna necessarily arises out of the alleged presence of PCBs in the waters of the lake. Injury and damage arising out of the City's occupancy of the lake come within the pollution exclusion.
 
 
 34
 VI. Failure to Warn: Products-Completed Operations Hazards
 
 
 35
 The City contends that the claims in the complaints based on a failure to detect and warn of the PCB contamination are not affected by the pollution exclusion and that coverage is afforded under the products-completed operations hazard which exists independent of Coverage A and its exclusions. We disagree.
 
 
 36
 The complaints claim that the City failed to detect and warn of the risks from the PCB contamination resulting from the City's construction and continuing occupancy of the lake. As stated above, the pollution exclusion clearly applies to bodily injury and property damage arising out of the City's occupancy. A fortiori the pollution exclusion applies to the claim of bodily injury or property damages resulting from the breach of a duty to warn which arises out of this occupation. See League of Minnesota Cities Ins. Trust v. City of Coon Rapids, 446 N.W.2d 419 (Minn.App.1989); Perkins Hardwood Lumber Co. v. Bituminous Casualty Corp., 190 Ga.App. 231, 378 S.E.2d 407 (1989).
 
 
 37
 The failure to warn could also be interpreted to relate to the City's operation of the lake for its drinking water supply and thus to a product--drinking water. Coverage for products-completed operations hazards is afforded only by the bodily injury or property damage insuring agreements contained in Coverage A which excludes pollution. Indeed, several of the Coverage A exclusions expressly describe how this coverage applies to products-completed operations hazards. The policy contains no separate or express coverage for such hazards.
 
 
 38
 The City asserts that drinking water is its product and that constructing the lake and supplying drinking water is its work. We disagree.
 
 
 39
 Bodily injury and property damage coverage arising out of the product-completed operation hazard applies to insureds who place products they make into the stream of commerce or who construct to completion buildings or similar types of physical work. See James T. Hendrick & James P. Wiezel, The New Commercial General Liability Forms--An Introduction and Critique, 36 FED. INS. & CORP. COUNSEL Q., 319, 333-35 (1986). Products hazards relate to injury arising out of the sale of goods produced, not the performance of a service. See Scarborough v. Northern Assur. Co., 718 F.2d 130, 135 (5th Cir.1983).
 
 
 40
 The district court did not address the applicability of the pollution exclusion to the product-completed operation hazard because it found that the most the policy would pay for products-completed operations hazards was the most the policy would pay under Coverage A and that amount was zero. Although we reach the same result, we do so by different reasoning.
 
 
 41
 It is unnecessary to decide whether polluted drinking water consumed or used at a remote location would cause bodily injury or property damage not "arising out of the ... discharge, dispersal, release or escape of pollutants ... from premises ... occupied" by the City. Overlooking the inconsistency between the City's claim that it does not own or occupy the lake but is operating it to produce a product--drinking water--none of the plaintiffs allege that the drinking water produced by the City has caused their damages. Instead, their claims focus on the lake and the contamination in it. Furthermore, we note that the City's "work" regarding the occupancy of the lake for the purpose of providing drinking water is not a completed work. The City continues to maintain the lake.
 
 
 42
 In sum, the pollution exception applies to all Coverage A forms of indemnity for liability arising out of bodily injury and property damage. The product-completed operation hazard, which is covered by this portion of the policy, does not apply to the allegations of the complaints. Titan had neither coverage nor a duty to defend these actions under Coverage A.
 
 
 43
 VII. Coverage B--Personal and Advertising Injury
 
 
 44
 The City contends that Titan also has a duty to defend under Coverage B. The insuring agreements under this coverage provide indemnity for "personal and advertising injury" caused by "an offense." "Advertising injury" is not implicated here. "Personal injury" is defined as "injury, other than bodily injury, arising out of ... a. [f]alse arrest, detention or imprisonment; b. [m]alicious prosecution; [or] c. [w]rongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies." Titan concedes that the pollution exclusion does not apply to this coverage. The City asserts that the charge in some complaints that PCB contamination affected lands adjacent to the lake comes within the wrongful entry provision of Coverage B.
 
 
 45
 The district court held such a construction of Coverage B was unreasonable. The court stated that to extend Coverage B to all property damages, including damages which would be covered under Coverage A, would render the pollution exclusion meaningless. This is correct. The risk of property damage caused by pollution, a risk which Titan expressly excluded and one for which the City paid no premium under Coverage A, would be subsumed under Coverage B.
 
 
 46
 The district court also noted that the complaints contained allegations that pollution from the lake had entered plaintiffs' premises. However, the complaints do not allege trespass per se, although some assert the waters of the lake caused contamination of plaintiffs' land with PCBs. They request damages for "future expenditures necessary to remove contaminated soil, flora and fauna from plaintiffs' property, and mental anxiety and emotional distress due to contamination of their property." Titan contends that none of the complaints allege that the City intentionally caused the entry or dispersal of PCBs onto plaintiffs' property. However, we note that some complaints did assert that the City knew of the pollution in the lake and failed to either clean it up or warn plaintiffs of the contamination.
 
 
 47
 The City cites Bell v. Sediment Removers, Inc., 479 So.2d 1078, 1080-81 (La.Ct.App.1985), cert. denied, 481 So.2d 1350 (La.1986) in support of its contention that the spread of pollutants can constitute a wrongful entry within the meaning of a policy of indemnity insurance containing a pollution exclusion. This case is distinguishable on its facts. The policy there contained a coverage provision which had been written into the policy at the insured's request for the specific purpose of covering the performance of a contract for sludge removal. The court ruled that this express language expanded the terms of the contract and overrode the general pollution exception contained in the printed policy form. Id. at 1082-83. No such clause appears here. Rather, we interpret a standard printed form. The City also relies on Titan Holdings Syn. v. City of Keene, N.H., 898 F.2d 265 (1st Cir.1990). Contrary to the City's contention, that court did not hold that the migration of fumes, noise and light constituted a wrongful entry within the meaning of a similar policy provision excluding pollution damage to personal property. Indeed, the court expressly reserved decision on this issue. Id. at 272 n. 7. The court stated that wrongful entry resembled an intentional trespass. Because no allegation was made that the pollution reached plaintiffs' land by intentional action of the insured, coverage for wrongful entry did not apply. Id. at 272.
 
 
 48
 Neither of these authorities supports the City's assertion that pollution generated by a third party, Tennessee Gas, which passed into and through property owned or occupied by the City--the lake--and injured abutting property of the plaintiffs constitutes a wrongful entry within the meaning of Coverage B. The definition of personal injury bears this out. Each of the enumerated risks specifically assumed requires active, intentional conduct by the insured. When viewed in the context in which they appear, the words "wrongful entry into, ... premises that the person occupies" do not afford coverage for the offense alleged in any complaint. Coverage B assumed to indemnify the insured for wholly different risks. Finding no coverage existed under Coverage B for the wrongs asserted in any complaint, we need not attempt to harmonize the operation of the pollution exception under Coverage A with respect to the allegations of damage to plaintiffs' property from PCBs.
 
 VIII. Dismissal with Prejudice
 
 49
 The City argued that the district court erred in dismissing the City's third party demand with prejudice. We agree. All groups of plaintiffs have amended their complaints against the City at least once, some as many as five times. They may do so again and may amend in some way that would implicate coverage or the duty to defend under Titan's policy. On remand the district court is directed to modify the dismissal so that only the issues of coverage and the duty to defend the claims as they existed at the date of summary judgment are dismissed with prejudice.
 
 IX. Conclusion
 The judgment of the district court is
 
 50
 AFFIRMED WITH DIRECTIONS TO MODIFY.