## Hetrick v. Valley Mutual Insurance Co.

*Marcus A. McKnight III,* for plaintiffs.
*William A. Addams,* for defendant.

HESS, *J.,* May 28, 1992—On July 27, 1987, the plaintiffs' home was heavily damaged by fire. In the course of the fire, the fuel oil tank ruptured spilling approximately 250 gallons of oil into the ground causing the pollution of ground water. The plaintiffs were insured with the defendant under a homeowners policy which covered the period from April 15, 1987, to April 15, 1990.

The defendant denied coverage based on a breach of the policy conditions. More specifically, the defendant alleged that the plaintiffs increased the risk, failed to mitigate the damages and intentionally set the fire. Thereafter, the plaintiffs filed a complaint seeking damages. On April 17-19, 1990, a bifurcated jury trial was held on the issue of liability for the fire resulting in a verdict for the plaintiffs. Now, in the damages phase, the defendant has petitioned for declaratory relief on the scope of coverage. The defendant contends that the insurance policy only covers the insured dwelling and contents but does not cover the ground or ground water.

## DISCUSSION

The extent of an insurer's coverage under an insurance policy is an issue which may properly be resolved in a declaratory judgment action. *Bird v. Penn Cent. Co.,* 351 F. Supp. 700, 701 (E.D. Pa. 1972); *Dent Manufacturing v. Pennsylvania Manufacturers Association Casualty Insurance Co.,* 32 Lehigh L.J. 165, 169 (1966). Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law. *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 760 (3d Cir. 1985). And although questions of fact do not preclude declaratory relief, the court has the discretion to send these issues to the jury. 42 Pa.C.S. §7539. See generally *Liberty Mut. Insurance Co. v. S.G.S. Co.,* 456 Pa. 94, 318 A.2d 906 (1974).

The homeowners policy provides coverage in section 1 for five different areas. In Coverage A, it covers the "dwelling on the *residence premises.*" In Coverage B, it covers "other structures on the *residence premises.*" In Coverage C, it covers "personal property owned or used by any insured." In Coverage D, it covers the loss of use of the residence premises. And finally, in Additional Coverages, it covers debris removal, reasonable repairs, trees, shrubs and other plants, etc.

The policy insures for direct loss to Coverages A-C caused by vandalism or malicious mischief (section 1, "Perils Insured Against," n. 8) and for accidental discharge or overflow of water or steam (section 1, "Perils Insured Against," n. 14). The issue then is whether a fire caused by vandalism or malicious mischief which results in an oil spill damaging the soil and ground water is covered under the homeowners policy. Initially, we note that the

damages involve real property and therefore Coverages B and C would not apply. As to Coverage D, this is contingent on a finding of coverage under A-C. Finally, the Additional Coverages simply do not cover an oil spill.

This leaves Coverage A as the plaintiffs' only source for recovery under the contract. The language under Coverage A limits coverage to the dwelling on the residence premises. Although dwelling is not defined in the policy, residence premises is listed as the "one or two family dwelling, other structures and grounds ... where you reside and which is shown as the 'residence premises' in the declarations." ("Definitions," n. 8) Because Coverage A is limited to the dwelling on the residence premises, the plaintiffs do not appear to be covered.

However, our inquiry does not end at this point. In *Western Fire Insurance Co. v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52 (1968), the insured closed its church building because of the infiltration of gasoline in the soil under and around the building. The insured subsequently sought coverage from the insurer for direct physical loss to the building. The Colorado Supreme Court found that when the gasoline under and around the church built up to the point that there was such infiltration and contamination as to make the building uninhabitable and highly dangerous to use there was direct physical loss. In quoting *Hughes v. Potomac Insurance Co.*, 199 Cal. App. 2d 239, 18 Cal. Rptr. 650 (1962), the court stated:

"To accept appellant's interpretation of its policy would be to conclude that a building which has been overturned or which has been placed in such a position as to overhang a steep cliff has not been 'damaged' so long as its paint

remains intact and its walls still adhere to one another. Despite the fact that a 'dwelling building' might be rendered completely useless to its owners, appellant would deny that any loss or damage had occurred unless some tangible injury to the physical structure itself could be detected. Common sense requires that a policy should not be so interpreted in the absence of a provision specifically limiting coverage in this manner." *Id.*, 437 P.2d at 56.

Utilizing similar reasoning, we conclude that an oil spill which pollutes the ground water may make a building uninhabitable. See also *Wagner v. Director, Fed. Emergency Management Agency*, 658 F. Supp. 1530 (C.D. Cal. 1987), *rev'd on other grounds*, 847 F.2d 515 (9th Cir. 1988) (inundation occurred when water thoroughly infiltrated the ground beneath the insured's home causing destabilization of the home's foundation). And if the building is uninhabitable, then there is direct loss to that building. *Gibson v. Secretary of U.S. Dept. of Housing*, 479 F.Supp. 3 (M.D. Pa. 1978) (interest in the dwelling house is the ability to occupy the house for residential purposes). The insurance policy in question covers the dwelling on the residence premises for direct loss by vandalism. If the jury finds that the home has been rendered uninhabitable by the oil spill, then the policy affords coverage. If not, the defendant's request for declaratory relief is granted.

## ORDER

And now, May 28, 1992, defendant's request for declaratory relief is granted conditional on a jury finding that the oil spill into the soil and water table did not render the dwelling uninhabitable.