**EAST QUINCY SERVICES DISTRICT, Plaintiff,**

v.

**CONTINENTAL INSURANCE CO., Defendant.**

**No. CIV–S–93–1163.**

United States District Court, E.D. California.

Oct. 4, 1994.

Kevin G. McCurdy, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Redwood City, CA, for defendant.

### AMENDED MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Plaintiff East Quincy Services District ("the District") and defendant Continental Insurance Company ("Continental") bring cross-motions for summary judgment regarding Continental's duty to defend and indemnify the District under the terms of their insurance policies.

The District filed suit seeking a declaratory judgment that Continental must defend and indemnify the District in a Plumas County Superior Court action, *Janet Laurie Joseph, et al. v. East Quincy Services District*, Civ. No. 16034, and now moves for summary judgment on its claim. Continental denies coverage and seeks summary judgment in its favor.

For the reasons stated below, the court grants Continental's motion. The policy's Pollution Exclusion Endorsement bars coverage for claims of "bodily injury" and "property damage." "Personal injury" coverage is also barred by the pollution exclusion and because damage caused by pollution is not due to "eviction" or "wrongful entry."

### I. Facts and Procedural History

This case involves a residential lot, previously owned by the District, that has been contaminated by E. coli and other bacteria, possibly from the septic tanks and leachfields of surrounding homes. The District first became aware of this problem on April 7, 1987, when the California Department of Health Services notified the District that the District's Well No. 6, which was located on the property, was contaminated with fecal coliform most likely originating from sewage. At that time, Health Services directed the District to cease using the well as a source of domestic water. (Sturm[1] Letter of 4/6/87, McCurdy Aff.Supp.D.'s Mot.Summ.J., Ex. E.) Regarding future use of the well, the District was told to consider that "[s]oils in

Blane A. Smith, Thompson & Heller, P.C., Sacramento, CA, for plaintiff.

---

1. Gunther L. Sturm, Senior Sanitary Engineer for the California Department of Health Services.

the area (and much of East Quincy) are known to be mostly sandy gravels [that] can allow contaminants to move readily. [And,] [t]here are numerous homes in the immediate area which dispose of wastewater through septic tank/leachfield systems." (*Id.*)

In September 1988, the District's Board of Directors proposed rehabilitation of the well. Although Health Services did not direct the District to forego rehabilitation, the District was strongly advised against such a plan because:

(1) Well No. 6 is surrounded by high density development with individual septic tank and leachfield disposal systems;

(2) Well No. 6 is constructed in an area of unfavorable soil conditions, mostly sandy gravels, which can allow contaminants to move readily;

(3) Well No. 6 is over thirty (30) years old, with no satisfactory sanitary seal and unknown condition of casing;

(4) Well No. 6 has a history of total coliform contamination;

(5) Well No. 6 most recently tested positive for fecal coliforms.

(Sturm Letter of 9/19/88, *Id.*, Ex. F.) Before Health Services would approve future use of the well, it would have to consider "how effectively the rehabilitation would exclude surface contaminants ..." (*Id.*) Based on this correspondence, the District abandoned its plan to rehabilitate the well, and the well was permanently sealed in February 1989.

The District sold the lot containing the sealed well to the Josephs on April 8, 1991. The Josephs placed a mobile home on the lot and installed a septic tank and leachfield system. They moved into their mobile home in July 1991. In their state court action, the Josephs allege that they became seriously ill in November 1991. After discovering that E.

coli and other sewage-borne bacteria were the causes of their illnesses, the Josephs filed suit in Plumas County Superior Court.

The Josephs' complaint alleges causes of action for fraud (intentional or negligent misrepresentation); products liability (negligence and breach of implied and express warranty); intentional infliction of emotional distress; general negligence; and breach of contract. (*See* Joseph Summons & Compl., McCurdy Aff.Supp.D.'s Mot.Summ.J., Ex. A.)

The District purchased annual policies from Continental from July 1, 1988, through July 1, 1993. The District initially tendered its request for defense and indemnity in the *Joseph* matter in September 1992. Continental refused defense and indemnification on the grounds that the pollution ·exclusion applied and that personal injury was not covered. This action ensued.

## II.  *The Policy*

The cross motions address both the duty to defend and the duty to indemnify. "[T]he duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages are ultimately awarded." *Montrose Chemical Corp. of California v. Superior Court,* 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 471, 861 P.2d 1153, 1157 (1993) (citing *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 213, 846 P.2d 792, 795 (1993)). Defense is required in any suit "which *potentially* seeks damages within the coverage of the policy." *Montrose,* 24 Cal. Rptr.2d at 471, 861 P.2d at 1157 (quoting *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (emphasis in original)).[2] Here, the District asserts that the claims brought against it by the Joseph family "potentially" seek damages covered by the policy. Continental argues that the District's claim is barred by the policy's pollution exclusion.[3]

---

2. "[T]he insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" *Montrose,* 24 Cal.Rptr.2d at 475, 861 P.2d at 1161 (emphasis in original).

3. Continental also argues that it has no duty to defend on a number of additional grounds: (1) there was no "occurrence;" (2) the alleged liability arose from a contract; (3) the alleged liability arose from property formerly under the care, custody, and control of the District; and (4) coverage is barred by the known loss doctrine. It is not necessary to reach these possible alternative bases for decision.

Continental's policy provides coverage for bodily injury [4] and property damage [5] liability under Coverage A. There are a number of exclusions to coverage, including a "Pollution Exclusion Endorsement," which states:

This insurance does not apply to:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened emission, discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by ... any insured ...

As used in this insurance:

"Pollutants" mean any noise, solid, semi-solid, liquid, gaseous or thermal irritant or contaminant, including.... biological and etiologic agents or materials, ... "waste" and any irritant or contaminant.

"Waste" includes any materials to be disposed, recycled, reconditioned or reclaimed.

At Coverage B, the policy provides coverage for "personal injury" [6] caused by an "offense." [7]

### III. *Coverage A—"Pollution Exclusion Endorsement"*

■ Continental contends that it has no duty to defend against the Josephs' bodily injury and property damage claims because coverage is barred by the policy's Pollution Exclusion Endorsement. Continental bears the burden of proving the application of a policy exclusion both on its motion for summary judgment and at trial. *See Royal Globe Insurance Co. v. Whitaker*, 181 Cal. App.3d 532, 226 Cal.Rptr. 435, 437 (1986). The District asserts that the exclusion is ambiguous and should be construed against the insurer, and that the exclusion does not apply on its terms.

The Pollution Exclusion Endorsement states that Continental will not cover bodily injury or property damage arising out of the "emission, discharge, dispersal, seepage, [or] migration ... of 'pollutants' ... [a]t or from any premises which is or was at any time owned or occupied by ... an insured." This language is clear and explicit, and expressly bars the Josephs' claims since they arise from pollution and contamination of the surface, the soil, or the groundwater by fecal coliform and other bacteria at the property.

■ Notwithstanding the clarity and expansiveness of the exclusion's language, the District contends that the language is ambiguous as applied to the circumstances here. First, the District suggests that the bacteria may not be "pollution" under the exclusion. But fecal coliform and other sewage-borne bacteria surely are "pollutants" under the policy because they are "solid, semi-solid, [or] liquid ... contaminant[s], including ... biologic and etiologic agents or materials ..." [8]

---

**4.** " 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

**5.** "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property, or
   b. Loss of use of tangible property that is not physically injured.

**6.** "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:
   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. Wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies;
   d. Oral or written publication of material that slanders or libels a person ...; or
   e. Oral or written publication that violates a person's right of privacy.

**7.** "Offense" is not defined by the policy.

**8.** In a Supplemental Memorandum in Opposition to Continental's Motion for Summary Judgment, the District makes the new argument that "a possibility exists that the bacteria that have allegedly caused the illnesses of the Josephs may be found to be a natural part of the earth and thus not 'pollutants' within the meaning of defendant's policies." (*Id.* at 978–81.)

To support this argument, the District attaches *County of Santa Clara v. United States Fidelity and Guaranty Co.,* 1993 WL 566443 (N.D.Cal. 1993) (unpublished), which states, "[t]here is yet another way coverage might be obtained. A jury might find that mercury was a natural part of the earth and thus not a pollutant." *Id.* at *3.

In the case at hand, however, the District has made no evidentiary showing that human fecal coliform bacteria are a "natural part of the earth and thus not 'pollutants;' " therefore, Continen-

*See* p. 979, *supra*. *See also Royal Ins. Co. v. Bithell*, 1993 U.S.Dist. LEXIS 15103, *7 (E.D.Mich.1993) ("[I]n this Court's view, raw sewage is clearly a contaminant ...").

Second, the District asserts that the exclusion does not clearly apply because the pollution originated off-site. But the exclusion applies when the pollution is "at" as well as "from" the site. There is no limiting language as to the origination of the pollution, and no one contests that the pollution here is "at" the site. The same argument advanced by the District has been resoundingly rejected as "sophistry" by the Fifth Circuit in *Gregory v. Tennessee Gas Pipeline Co.*, 948 F.2d 203 (5th Cir.1991), and it is equally unpersuasive here.[9] *Cf. Northern Ins. Co. of New York v. Aardvark Assoc., Inc.*, 942 F.2d 189, 194 (3rd Cir.1991) ("We also reject [the insured's] argument that the pollution exclusion clause applies only to 'active' polluters, *i.e.*, those who 'actually release pollutants,' ... and not 'passive' polluters."). *Accord United States Fidelity and Guar. Co. v. George W. Whitesides Co., Inc.*, 932 F.2d 1169, 1170 (6th Cir.1991); *O'Brien Energy Sys., Inc. v. American Employers' Ins. Co.*, 427 Pa.Super. 456, 629 A.2d 957, 963 (1993); *Powers Chemco, Inc. v. Federal Ins. Co.*, 74 N.Y.2d 910, 549 N.Y.S.2d 650, 651, 548 N.E.2d 1301, 1302 (1989).

■ Finally, the District argues that the pollution exclusion does not apply or is ambiguous because the Josephs' claims do not depend on the movement of bacteria on the surface, in the soil, and in the groundwater, while the language of the pollution exclusion refers to the movement of pollutants. This argument is also unpersuasive. To begin with, the terms of the exclusion—"emission, discharge, dispersal, seepage, migration, release, or escape"—cover every conceivable manner in which a person could experience exposure to a pollutant. The very assertion of contact by the Josephs requires emission, release, dispersal, or escape. Moreover, just as a court may look to extrinsic evidence to establish the potential for coverage, it may look to the same evidence to establish the impossibility of coverage. *Montrose*, 24 Cal. Rptr.2d at 474, 861 P.2d at 1160. As stated above, the District has provided absolutely no evidence that sewage-borne bacteria occur naturally stagnant in the soil. The District itself maintains that the bacteria originated off-site and migrated to the lot. The letters from the California Department of Health Services make repeated references to the ease of movement through the soil. The evidence in the record only supports a finding that this pollution is dispersing, migrating, escaping, and seeping at the lot.

The District has failed to establish the existence of genuine issues of material fact regarding the application of the pollution exclusion; therefore, Continental's motion for summary adjudication of this issue is granted.

## IV. *Coverage B: "Personal Injury"*

■ Under Coverage B, Continental "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' ... to which this insurance applies." "Personal injury" is defined to include a number of intentional torts, including "injury, other than 'bodily injury,' arising out of ... (c) Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies."

---

tal is entitled to summary adjudication of this issue.

Additionally, the District's argument contradicts the plain language of the policy which defines "pollutant" as:

any noise, solid, semi-solid, liquid, gaseous or *thermal irritant or contaminant, including ...* biological and etiologic agents or materials, ... "waste" and any irritant or contaminant.

Nowhere within this definition is there a requirement that the irritant or contaminant be "manmade" or "unnatural," and, indeed, the inclusion of "biological" agents and "any irritant" suggests the contrary.

9. In *Gregory*, the Fifth Circuit held that there was no duty to defend the owner of a lake which was contaminated by a neighbor's chemical dumping at its facility from a pipe *above* the waters of the lake. The insured argued that the pollution did not occur "at or from the premises" and, therefore, did not fall within the terms of the pollution exclusion. The Fifth Circuit rejected this argument because the plaintiffs claimed to have been injured by the presence of pollutants *in* the lake and, therefore, "[t]he claims against the [owner] arise solely from pollutants at or from the lake." *Id.* at 206–07.

The District argues that even if the pollution exclusion bars coverage for bodily injury and property damage under Coverage A, the Josephs have also potentially stated a claim for "personal injury" under Coverage B. The District notes that the Pollution Exclusion Endorsement does not expressly apply to claims under Coverage B, and argues that the "wrongful entry" portion of the personal injury definition would cover property damage caused by pollution coming on to a site. If there is potentially a claim for personal injury coverage, Continental must defend against all of the Josephs' claims because "[o]nce the duty to defend attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered ..." *Horace Mann*, 17 Cal. Rptr.2d at 213–14, 846 P.2d at 795–97.

The District bases its Coverage B claim on the failure of the pollution exclusion to expressly exclude personal injury liability. As several courts have now held, however, it is hardly a fair reading of the policy to permit property and environmental claims, under the guise of "personal injury," where the pollution exclusion clearly protects the insurer from precisely such claims. These courts have reasoned first that the pollution exclusion must apply to personal injury coverage or else the exclusion would be voided, and, second, that damages from pollution do not amount to the kind of wrongful entry or eviction envisioned by the policy language relating to intentional torts particularly when viewed in light of the pollution exclusion.

Thus, in *W.H. Breshears, Inc. v. Federated Mut. Ins. Co.*, 832 F.Supp. 288 (E.D.Cal. 1993), a vandal broke into Breshears' premises and caused unleaded gasoline to be released from an aboveground storage tank.

The gasoline damaged both Breshears' and neighboring properties. Breshears sought defense and indemnity coverage from its insurer. The district court declared that the insurer had no duty to defend or indemnify under the "personal injury" coverage for two reasons. First, the court found that the escape of a pollutant, like gasoline or sewage, does not state a claim for wrongful eviction or wrongful entry:

> the offenses of "wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies" involve a claim by one person over another to the occupancy of property. A wrongful eviction takes place when a tenant is dispossessed by his or her landlord. A wrongful entry takes place when someone other than the landlord claims a possessory interest in the room, dwelling or premises. These two offenses are contrasted with the torts of trespass, public or private nuisance, and strict liability for "ultrahazardous" activity, which do not involve a claim by one person over another to the occupancy of property. As a matter of law, the protections contained within the [insurer's] policies for liability arising out of "Personal Injury" do not protect against the torts of trespass, public and private nuisance, and strict liability for "ultrahazardous" activity.

*Breshears*, 832 F.Supp. at 291.[10] Second, the court held that even if pollution damage could constitute a wrongful entry, "coverage would be excluded by virtue of the policies' 'pollution' exclusions." *Id.*

The California Court of Appeal reached a similar result in *Titan Corp. v. Aetna Casualty & Surety Co.*, 22 Cal.App.4th 457, 27

---

10. *Accord Gregory*, 948 F.2d at 209 ("Each of the enumerated risks specifically assumed [in Coverage B] requires active intentional conduct by the insured." Therefore, "wrongful entry" does not afford coverage for negligence in the spread of contamination.); *County of Columbia v. Continental Ins. Co.*, 189 A.D.2d 391, 595 N.Y.S.2d 988, 991 (N.Y.1993) ("[A]n action for environmental damage to real property ... could not possibly constitute a 'wrongful entry or eviction or other invasion of the right to private occupancy' so as to come within the personal injury liability coverage of defendants' policies.... '[W]rongful entry' and 'eviction' both ... involve actual interference with possessory rights to real property. Based upon the foregoing, we conclude that the coverage under the personal injury liability endorsement is limited to liability for purposeful acts aimed at dispossession of real property by someone asserting an interest therein."); *Decorative Center of Houston v. Employers' Casualty Co.*, 833 S.W.2d 257, 261–62 (Tex.Ct. App.1992) ( [These offenses "are meant to cover only landlord-tenant situations, or, if extended, only similar instances where the defendant insured has some superior right of occupancy to that of the plaintiff.").

Cal.Rptr.2d 476 (1994). In *Titan*, the court interpreted an insurance policy with a similar pollution exclusion but a broader definition of "personal injury" than the one at issue here.[11] Following California's rule that contractual language should be interpreted "in a manner which gives force and effect to every clause rather than to one which renders clauses nugatory," *id.* at 485 (citation omitted), the court found that the policy "unambiguously declares it will not pay for either bodily injury or property damage when the cause of such injury or damage is pollution." *Id.* at 486. Thus, the "personal injury" clause *may only be interpreted to cover injuries to the occupant distinct from those covered by "bodily injury" and "property damage" coverage. Id.[12] Any other interpretation would "render[ ] the pollution exclusion a dead appendage to the policy." Id.[13] The reasoning of these cases is persuasive.*

▮ Under *Titan*, Continental only has a duty to defend against any personal injury claims that are distinct from bodily injury and property damage claims subject to the pollution exclusion. As stated above, "property damage" includes the loss of use of tangible property. *See* n. 5, *supra.* All of the Josephs' personal injury claims, however, are identical to claims for property damage and coverage therefore is barred by the pollution exclusion.[14] Alternatively, under the reasoning of *Breshears*, the term "wrongful entry" cannot be understood to cover pollution migrating from another property, both in light of the pollution exclusion and because the unintended release of pollutants from one property to another does not involve a claim of occupancy by one person over another and is not remotely analogous to the intentional torts that are enumerated in the personal injury coverage.

## V. Conclusion

Because Continental has met its burden of showing the absence of a potential for coverage for any of the Josephs' claims against the District, Continental's motion for summary

**11.** In *Titan*, personal injury was defined as "wrongful entry or eviction *or other invasion of the right of private occupancy." Id.*, 27 Cal. Rptr.2d at 485 (emphasis added). Continental's definition does not include the underscored language.

**12.** The *Titan* court left open the possibility of an action for damages for the disturbance of quiet enjoyment. (*Id.*, 27 Cal.Rptr.2d at 486.) In this case, however, such damages are expressly included in the definition of property damage. *See* n. 5, *supra.*

**13.** *Accord Gregory v. Tennessee Gas Pipeline Co.,* 948 F.2d 203, 209 (5th Cir.1991) ("[T]o extend Coverage B to all property damages, including damages which would be covered under Coverage A, would render the pollution exclusion meaningless."); *County of Columbia v. Continental Ins. Co.,* 189 A.D.2d 391, 595 N.Y.S.2d 988, 991 (N.Y.1993); *O'Brien Energy Systems, Inc. v. American Employers' Ins. Co.,* 427 Pa.Super. 456, 629 A.2d 957, 964 (1993) ("[T]o extend the personal injury coverage to occurrences which fall squarely within the property damage coverage would have the effect of rendering the pollution exclusion meaningless.") (citing *County of Columbia,* 595 N.Y.S.2d at 991). *See also Decorative Center of Houston v. Employers Casualty Co.,* 833 S.W.2d 257, 260 (Tex.Ct.App.1992) ("The policies' drafters surely would not permit actions excluded under one portion of the policy to be covered under a subsequent part.").

Two Circuit Court cases cited by the District have reached the opposite conclusion. *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.,* 976 F.2d 1037, 1042 (7th Cir.1992) (Personal injury coverage is "under no circumstances limited by the pollution exclusion clause."); *Titan Holdings Syndicate, Inc. v. City of Keene, New Hampshire,* 898 F.2d 265, 272–73 (1st Cir.1990). Those decisions have been explicitly rejected by the California Court of Appeal in *Titan Corp.,* 27 Cal.Rptr.2d at 486–87.

**14.** The holding in *Staefa Control–System Inc. v. St. Paul Fire & Marine Ins. Co.,* 847 F.Supp. 1460 (N.D.Cal.1994), is consistent with the decision in this case. The *Staefa* court held that trespass and nuisance claims could not be brought under the policy's personal injury coverage because "it is simply not objectively reasonable for an insured to expect that pollution damage specifically excluded from coverage by its property damage provision would be covered under its personal injury provision." *Id.* at 1474 (citing *Titan Corp. v. Aetna Casualty & Sur. Co.,* 27 Cal.Rptr.2d 476, 487 (1994)). *Accord County of Columbia v. Continental Ins. Co.,* 83 N.Y.2d 618, 634 N.E.2d 946, 612 N.Y.S.2d 345 (1994). The holding in *Staefa* is all the more compelling because the personal injury provision at issue in *Staefa* as in *Titan*—defined as "[w]rongful entry, wrongful eviction, *or other invasion of the right of private occupancy," id.* at 1465 (emphasis added)—was far broader than the personal injury provision here.

judgment is granted. The Clerk shall enter judgment in favor of defendant.

IT IS SO ORDERED.