

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-18-2005

# Motorists Mutl Ins v. Hardinger

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1750

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Motorists Mutl Ins v. Hardinger" (2005). *2005 Decisions.* Paper 1166.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1166

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-1750

———————

MOTORISTS MUTUAL INSURANCE COMPANY

v.

DAVID M. HARDINGER; CHRYSTAL HARDINGER,

Appellants

———————————————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 02-cv-08310
(Honorable Franklin S. Van Antwerpen)

———————

Argued March 10, 2005
Before:  SCIRICA, *Chief Judge*, ROTH and AMBRO, *Circuit Judges*

(Filed:  May 18, 2005)

TIMOTHY G. LENAHAN, ESQUIRE (ARGUED)
CHRISTINE S. LEZINSKI, ESQUIRE
Lenahan & Dempsey, P.C.
116 North Washington Avenue
Suite 400, Kane Building
P.O. Box 234
Scranton, Pennsylvania 18503

STEPHEN J. DEVINE, ESQUIRE
Armstrong & Carosella
882 South Matlack Street, Suite 101
West Chester, Pennsylvania 19382

Attorneys for Appellants

LYNNE K. BEUST, ESQUIRE (ARGUED)
DAVID E. TURNER, ESQUIRE
Bingaman, Hess, Coblentz & Bell, P.C.
Treeview Corporate Center
Suite 100, 2 Meridian Boulevard
Wyomissing, Pennsylvania 19610

Attorneys for Appellee

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

The District Court granted summary judgment to Motorists Mutual Insurance Company ("Motorists"), holding that Motorists had no duty to provide insurance coverage under David and Chrystal Hardinger's homeowner's insurance policy. We will vacate and remand.

I.

At the end of October of 2000, the Hardingers bought a homeowner's insurance policy from Motorists for their home in Berks County. Coverage under the policy began on September 29, 2000, and continued until October 1, 2001. Within a week and a half of moving in, Chrystal Hardinger and her children became ill, experiencing infections, as well as respiratory, viral, and skin conditions. The Hardingers vacated the premises on February 28, 2001, notifying Motorists on May 10, 2001, that they would pursue a property damage claim under the policy.

Motorists conducted a study on February 28, 2001, and received a report from the testing company on October 19, 2001. Motorists employed a second company to analyze the samples taken from the Hardingers' well. The test occurred on June 14, 2001, and the group issued a report on June 19, 2001. It found that the well was contaminated with e-coli bacteria. On August 26, 2002, a third testing company collected and tested water samples, and in a report issued on September 19, 2002, also found the samples contained e-coli.

On October 22, 2001, Motorists informed the Hardingers it would deny their property claim for the following reasons:

> The occurrence of the loss was prior to the inception of the policy by Motorists Insurance Group. The loss is also excluded under the current Home Owners Policy carried by the above insured.

The letter also stated that the loss fell under a policy provision that excluded loss caused by pollutants ("the pollution exclusion"). Motorists reaffirmed its denial of coverage in a letter dated October 4, 2002.

Attempts to fix the problem were unsuccessful. The Hardingers conveyed their property to National Penn Bank on February 19, 2003.

On November 4, 2002, Motorists brought a declaratory judgment action against the Hardingers, seeking a determination that it was under no duty to provide insurance coverage under the policy. The District Court granted Motorists' motion for summary

3

judgment on the basis that the Hardingers failed to establish a physical loss, a prerequisite for coverage under the policy.

## II.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332 and the declaratory judgment action was brought under 28 U.S.C. § 2201. We have jurisdiction over this appeal based upon 28 U.S.C. § 1291.

Summary judgment is appropriate if there are no genuine issues of material fact presented and the moving party is entitled to judgment as a matter of law.[1] Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322- 23 (1986). In determining whether a genuine issue of fact exists, we resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Suders v. Easton,* 325 F.3d 432, 435 n.2 (3d Cir.2003). On appeal, "[w]e apply the same standard that the District Court should have applied." *Stratton v. E.I. DuPont De Nemours & Co.,* 363 F.3d 250, 253 (3d Cir. 2004). Pennsylvania substantive law applies in this diversity suit. *Nowak By and Through Nowak v. Faberge USA Inc.*, 32 F.3d 755, 757 (3d Cir. 1994).

---

[1]The District Court incorrectly identified the non-moving party as Motorists, stating that "[a]ll inferences must be drawn, and all doubts resolved, in favor of the non-moving party – *in this case, Plaintiff*" (emphasis added). The non-moving party in this case was not the plaintiff, Motorists, but the defendants, the Hardingers. We believe this mistake was in all likelihood a clerical error and did not reflect the District Court's actual analysis. On remand, the District Court should ensure that it draws inferences and resolve doubts in favor of the appropriate party.

III.

Motorists argues that three grounds justify its denial of coverage: the loss does not constitute a "physical loss," the loss predated the policy, and the loss falls within the pollution exclusion. We believe there is a genuine issue of material fact on whether there was a physical loss and whether the loss predated the policy. We leave the inquiry whether the pollution exclusion applies to the District Court.

A. Physical Loss

A prerequisite for coverage under the homeowner's policy is "direct physical loss or risk of a direct physical loss." The policy does not define the term "physical loss to property."[2] Holding that there was no genuine issue on whether there was a physical loss, the District Court granted summary judgment to Motorists.[3] While the bacteria allegedly made the house uninhabitable, the court deemed this a "constructive loss," and held it insufficient to satisfy the policy's requirement of "physical loss."

We look to Pennsylvania law in this diversity action and predict how the Supreme Court of Pennsylvania would decide the case. *See Debiec v. Cabot Corp.*, 352 F.3d 117, 128 (3d Cir. 2003) (citing *Bohus v. Beloff,* 950 F.2d 919, 924 (3d Cir. 1991)). No Pennsylvania Supreme Court case, however, directly addresses whether loss of use may

---

[2]In the definition section, the policy does, however, define the term "property damage" as "physical injury to, destruction of, or loss of use of tangible property."

[3]We agree with the District Court that Motorists did not waive its ability to deny coverage on the basis that there was no physical loss.

constitute a physical loss. Decisions of lower Pennsylvania courts also provide little guidance.[4]

In *Port Authority of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002), we considered a similar policy that insured against "physical loss or damage" as it applied to existence of asbestos in the insured buildings.[5] We held that the insurer was only required to cover the expense of correcting the problem insofar as the asbestos made the structure unusable. *Id*. at 230.[6] In the case of asbestos, *Port Authority* stated the following as the "proper standard for 'physical loss or damage' to a structure":

> only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its *function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable*, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such *loss of utility*.

*Id*. at 236 (emphasis added).

---

[4]Instructive, however, is *Hetrick v. Valley Mut. Ins. Co.*, 15 Pa. D. & C.4th 271, 273 (Pa. Com. Pl. 1992). In *Hetrick*, the court gave substantial attention and approval to *Western Fire Insurance Co. v. First Presbyterian Church*, 165 Colo. 34, 38-39(1968). In that case, the Colorado Supreme Court held the term "direct physical loss" extended to cover the loss of use of the insured property where the accumulation of gasoline around and under the property rendered it uninhabitable.

[5]Like the Hardingers' policy, the policy in *Port Authority* was a first-party insurance policy – one which protects against loss caused by injury to the insured's property. *See Port Authority*, 311 F.3d at 233.

[6]We noted that, "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure." *Port Authority*, 311 F.3d at 235. (citing 10 Couch on Insurance § 148:46 (3d ed.1998)). We found that "[p]hysical damage to a building as an entity by sources unnoticeable to the naked eye must meet a higher threshold." *Id.*

The District Court provided two reasons why *Port Authority* is inapplicable. First, the District Court reasoned that *Port Authority*'s holding, a "prediction of what may eventually become the law of [New York and New Jersey]," is not applicable to this diversity case, which is governed by Pennsylvania substantive law. *Motorists Mut. Ins. Co. v. Hardinger*, 2004 WL 384999, at *5 n.5 (E.D.Pa. Feb. 27, 2004). We find nothing, however, in New York, New Jersey, or Pennsylvania law that would cause us to disregard *Port Authority* under Pennsylvania law. Indeed, *Port Authority* noted that "applicable state law provides no guidance," *id*. at 234-35, and thus, it appears that nothing unique about the law of New York or New Jersey dictated the result. Nor does it appear that there is any substantive law in Pennsylvania at odds with *Port Authority*. Second, the District Court suggested that *Port Authority* does not apply because "[t]he presence of asbestos in a structure presents unique concerns" not applicable in this case. Hardinger, 2004 WL 384999, at *5 n.5. While we agree that asbestos presents unique concerns, we find *Port Authority* instructive in a case where sources unnoticeable to the naked eye have allegedly reduced the use of the property to a substantial degree.

We predict that the Pennsylvania Supreme Court would adopt a similar principle as we did in *Port Authority*. Applying *Port Authority*'s standard here, we believe there is a genuine issue of fact whether the functionality of the Hardingers' property was nearly eliminated or destroyed, or whether their property was made useless or uninhabitable.

7

B. Whether the Loss Predated the Policy and the Pollution Exclusion

Because it decided the motion for summary judgment entirely on the basis that there was no physical loss, the District Court did not consider Motorists' other stated reasons for denial – namely, that the loss predated the policy and that it fell within the pollution exclusion.

1. Whether the Loss Predated the Policy

We believe the August 20, 2001 memorandum written by Ron Snyder, a Motorists regional property consultant, at the least, creates a genuine issue of material fact on whether the loss predated the policy. Snyder wrote:

> After as through [sic] investigation as possible at this time it can also be concluded that the well became contaminated after our insured moved into the house based of a water test by the health department and the fact that the previous occupants did not become ill. **Microbiological contamination was not found in the water well when it was tested in 1998**.

Appendix at 393 (emphasis in original). Snyder's opinion may not definitively establish that the loss occurred after the policy's inception, but it is sufficient to create a genuine issue of fact. Summary judgment on the basis that the loss predated the policy is therefore inappropriate for Motorists.

2. Pollution Exclusion

The pollution exclusion applies to loss caused by "solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids[,] alkalis, chemicals and waste." There is no Pennsylvania case law identified by the parties that addresses

8

whether bacteria should fall within the definition. Courts that have addressed whether

bacteria fits under similar pollution exclusions are divided. *Compare Keggi v.

Northbrook Prop. and Cas. Ins. Co.*, 199 Ariz. 43, 47 (Ariz. App. Div. 2000) (holding

that bacteria does not constitute a pollutant under an identical pollution exclusion clause),

*and E. Mut. Ins. Co. v. Kleinke*, Index # 2123-00, RJI #0100062478 (N.Y. Super. Ct. Jan.

17, 2001) (holding that similar pollution exclusion is ambiguous on whether e-coli

bacteria falls within the policy's definition of pollutant), *with Landshire Fast Foods of

Milwaukee v. Employers Mut. Cas. Co.*, 676 N.W.2d 528, 532 ("bacteria, when it renders

a product impaired or impure" falls within "the ordinary, unambiguous definition of

'contaminant'").

While Judge Ambro's concurrence thoughtfully considers the matter, we express

no opinion. We believe the issue whether bacteria fall under the plain meaning of the

pollution exclusion or whether the pollution exclusion is ambiguous as applied to the

facts of this case should be left to the District Court in the first instance.[7] Therefore, we

---

[7]Some insurers have defined "pollutant" to include biological and etiologic agents. *See, e.g., Hydro Sys., Inc. v. Cont'l Ins. Co.*, 929 F.2d 472, 474 (9th Cir. 1991) (defining pollutant as "any noise, solid, semisolid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, mists, acids, alkalis, chemicals, *biological and other etiologic agents or materials*") (emphasis added); *E. Quincy Servs. Dist. v. Cont'l Ins. Co.* 864 F.Supp. 976, 979 (E.D.Ca. 1994) ("'Pollutants' mean any noise, solid, semi-solid, liquid, gaseous or thermal irritant or contaminant, including. . . . biological and etiologic agents or materials, . . . "waste" and any irritant or contaminant.").

9

will direct the court to consider whether the pollution exclusion applies to the presence of e-coli bacteria in the Hardingers' well.[8]

IV.

Summary judgment was not proper because there is a genuine issue of material fact whether there was a physical loss. In addition, there is at least a genuine issue whether that loss predated the policy and we leave to the District Court to address the applicability of the pollution exclusion in the first instance. For the foregoing reasons, we will vacate and remand.

AMBRO, Circuit Judge, concurring

I agree with my colleagues that there are genuine issues of material fact regarding whether there was a physical loss and whether that loss predated the policy. Though I also agree that the District Court should consider this issue in the first instance, I write

---

[8]Whether or not the pollution exclusion applies to bacteria *per se*, e-coli may spread through sewage-contaminated water and waste, and there may be a question whether that is classifiable as a pollutant. *But see Inc. Village of Cedarhurst v. Hanover Ins. Co.*, 223 A.D.2d 528, 529 (N.Y. App. Div. 1996) ("'raw sewage' is not explicitly listed in the policy as a pollutant, and the term 'waste' contained in the exclusion is subject to more than one reasonable interpretation. Thus, since the exclusion is ambiguous as to whether raw sewage is encompassed within the definition of waste, the exclusion is not applicable in this case") (collecting cases). In this case, however, so far as we can determine, the record does not appear to show how the e-coli found its way into the Hardingers' well.

separately to explain briefly why the pollution exclusion is likely ambiguous (if not plainly inapplicable) as applied to the facts of the case. This issue is crucial in the insurance context because "where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer." *Minn. Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004).

With respect to the pollution exclusion, the parties have primarily addressed two possible bases of ambiguity. First, they have jousted over the meaning of the language in the policy limiting the exclusion to situations involving the "[d]ischarge, dispersal, seepage, migration, release or escape of pollutants." At this stage of the proceedings the source of the bacteria has not been established; therefore, the resolution of this point of contention is best left to the District Court.

Whether the second issue regarding the pollution exclusion should be resolved now or on remand presents a closer question. As Chief Judge Scirica indicates, courts have reached different conclusions regarding whether bacteria are "pollutants" under similar policy language. Nevertheless, *Keggi v. Northbrook Property and Casualty Insurance Co.*, 13 P.3d 785 (Ariz. Ct. App. 2000), is instructive. In reaching its conclusion that an identical pollution exclusion did not include bacteria within the definition of "pollutants," the Court pointed out the significant problems with reading the exclusion to cover bacteria. The policy (like the Hardingers') limited "pollutants" to "irritants" and "contaminants" that are "solid, liquid, gaseous or thermal" and the Court

11

reasoned—correctly, in my view—that "water-borne bacteria . . . do not fit neatly within this definition. To the extent that bacteria might be considered 'irritants' or 'contaminants' they are *living, organic* irritants or contaminants that defy description under the policy as 'solid,' 'liquid,' gaseous,' or 'thermal' pollutants." *Id.* at 789-90 (emphasis in original).

The policy in *Keggi* also stated that "smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste" were included within the definition of "pollutants." *Id.* at 790. However, "[b]acteria, as living organisms, are not similar to the exclusion's enumerated list." *Id.* While there is an argument that bacteria, to the extent they emanate from sewage (apparently a factual possibility in our case), fall within the definition of "waste," that term appears to be either inapplicable or susceptible to more than one reasonable interpretation, in which case the language is ambiguous. *See id.*; *see also Wagner v. Erie Ins. Co.*, 801 A.2d 1226, 1231 (Pa. Super. Ct. 2002) ("Terms in an insurance contract are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." (internal quotation omitted)).

On the other side of the legal divide, the Wisconsin Court of Appeals held in *Landshire Fast Foods of Milwaukee v. Employers Mutual Casualty Company*, 676 N.W.2d 528, 532 (Wis. Ct. App. 2004), that the term "contaminants" in a similar pollution exclusion unambiguously "incorporates bacteria such as Listeria monocytogenes" in food products. *Landshire Fast Foods*, however, is inconsistent with

12

Pennsylvania case law. Under Pennsylvania law, courts are guided by the principle that ambiguity (or the lack thereof) is "determined by reference to a particular set of facts." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 107 (Pa. 1999). The *Landshire Fast Foods* Court, applying Wisconsin law, accepted the conclusion reached in a prior case that language in the policy was unambiguous, notwithstanding that the case relied on did not involve bacteria, but brine and ammonia. *See Landshire Fast Foods*, 676 N.W.2d at 532 (citing *Richland Valley Prods. v. St. Paul Fire & Cas. Co*., 548 N.W.2d 127, 132 (Wis. Ct. App. 1998)). For this reason, I believe the Pennsylvania Supreme Court is unlikely to find *Landshire Fast Foods*'s reasoning persuasive. *Cf. Nationwide Mut. Fire Ins. Co. v. Pipher,* 140 F.3d 222, 228 (3d Cir. 1998) (explaining that in applying Pennsylvania law "we are not free to exercise our independent judgment but must instead predict how the Supreme Court of Pennsylvania would rule").

While it is prudent to afford the District Court the opportunity to consider these issues in the first instance, I doubt further proceedings will render the reasoning of *Keggi* less apt. With this personal sidebar to my colleagues' opinion, I concur.