614 So.2d 633 (1993)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Jandy HINESTROSA and George Hinestrosa, Appellees.
No. 91-3155.
District Court of Appeal of Florida, Fourth District.
February 24, 1993.
*634 Richard A. Sherman and Rosemary B. Wilder, of Richard A. Sherman, P.A., Fort Lauderdale, for appellant.
Robert Feldman of Law Office of Philip M. Berman, Pompano Beach, for appellees.
FARMER, Judge.
While travelling in Missouri, the Hinestrosas were involved in an automobile accident. The attorney for Mrs. Hinestrosa contacted their insurer, State Farm, and inquired whether there were any coverage defenses for the accident. State Farm responded that there were "no known policy defenses at this time." Jandy sued her husband, alleging that he had negligently operated the vehicle and thereby caused her to suffer injuries. State Farm was not a named defendant in the personal injury action but provided George with a defense under a reservation of rights.
After the case proceeded through discovery, the parties stipulated to negligence, and the cause was set for trial on the issue of damages. Before trial, however, State Farm filed a declaratory judgment action against the Hinestrosas. It alleged that the policy contained an exclusion from coverage for any bodily injury to any insured or any member of an insured's family residing in the insured's household. The Hinestrosas alleged estoppel and waiver as defenses, arguing that State Farm had failed to comply with sections 627.426 and 627.7264, Florida Statutes (1989), because their insurer had never previously asserted the family exclusion as a policy defense. The Hinestrosas moved for summary judgment on that basis, and the trial court granted their motion, entering a judgment that stated in its operative provisions:
2. That the Petition seeking Declaratory Relief is hereby dismissed with Prejudice.
3. That Plaintiff shall take nothing by this action and that Defendant [sic] go hence without day.
It is from this judgment that State Farm has brought this appeal.
Before addressing the merits of the coverage issue, we pause to note the form of the final judgment entered. The action which led to the judgment was an ordinary declaratory judgment action to determine whether there was coverage under a liability insurance policy for a specific claim already in litigation. Even if State Farm was wrong in its contention that there was *635 no coverage under the subject policy for the claim, it was still entitled to a declaration by judgment on the coverage issue. In other words, the form of the judgment is incorrect in dismissing State Farms's pleading seeking a declaratory judgment on the coverage question, simply because the judge had concluded  contrary to State Farm's position  that coverage did exist.
When a party seeks a declaratory judgment as to coverage under an insurance policy, it is functionally seeking the court's construction as to the rights and liabilities of the parties under a contract. The mere fact that one of the contracting parties is in error as to its own interpretation of the contract language does nothing to vitiate the party's right to the court's construction of the contract. The proper form would have been to enter a judgment declaring that coverage either existed or did not exist. It only compounded the error to add the irrelevant words that "plaintiff take nothing and defendant go hence without day"  words usually found in cases seeking only a money judgment rather than a declaratory judgment.
Turning to the merits, the gist of the insured's case for coverage is that State Farm failed to comply with the "Claims Administration Statute," section 627.426(2), Florida Statutes (1989), which provides in pertinent part:
(2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
(a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and
(b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before the trial, the insurer:
1. Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;
2. Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or
3. Retains independent counsel which is mutually agreeable to the parties. * * *
The problem with the position of the Hinestrosas is that their case is entirely undercut by the supreme court's decision in AIU Insurance Company v. Block Marina Investment Inc., 544 So.2d 998 (Fla. 1989). The issue in that case, as here, was whether a liability insurer "is prohibited from denying coverage in connection with a loss, coverage for which is excluded under a comprehensive liability policy, due to its noncompliance with the notice requirements of section 627.426(2), Florida Statutes (1985)." The court held:
We do not believe that the legislature intended, by the enactment of section 627.426(2), to give an insured coverage which is expressly excluded from the policy or to resurrect coverage under a policy or an endorsement which is no longer in effect, simply because an insurer fails to comply with the terms of the aforementioned statute.
544 So.2d at 999. In reaching its conclusion the court expressly cited this court's decision in Country Manors Association v. Master Antenna Systems, Inc., 534 So.2d 1187 (Fla. 4th DCA 1988). There, Judge Gunther encapsulated the central idea in her customarily discerning prose: "An insurer does not assert a `coverage defense' where there was no coverage in the first place." 534 So.2d at 1195.
The supreme court distinguished between the use of estoppel to prevent a forfeiture of insurance coverage, on the one hand, and the use of an estoppel to create or extend coverage, on the other. 544 So.2d at 1000. The former may be *636 proper but the latter is not. Hence, even conceding that an insurer has failed to comply with the requirements of the Claims Administration Statute, that failure will not bar the carrier from asserting an entire lack of coverage. This want of coverage may exist simply because the insuring clause does not by its express terms apply to the kind of claim being made, or it may exist simply because the policy elsewhere expressly excludes the coverage.
The Hinestrosas seek to avoid AIU by the shelter of Crown Life Insurance Co. v. McBride, 517 So.2d 660 (Fla. 1987). The facts in McBride are in stark contrast, however, and the issue  though ostensibly the same  fundamentally different. In that case, the father of a child inquired of Crown as to whether its group health insurance policy, available at his newly accepted employment, would provide coverage for his child. The boy was then 20 years old, suffered from a genetic disease causing premature aging, was classified at school as a slow learner, and was entirely dependent on the father.
After some discussions, the father was led to believe that there would be coverage. Consequently, he allowed his existing coverage with another insurer to lapse and purchased the group coverage from Crown. Later, after a claim had been made, Crown took the position that no benefits were due because the child had been disabled from the very inception of the father's group coverage. A jury found in favor of the child on a theory of estoppel and oral contract, and we affirmed the resulting judgment.
In partially affirming our decision, the supreme court specifically adopted and recognized the equitable doctrine of promissory estoppel where the refusal to enforce a promise unsupported by consideration would be virtually to approve the perpetration of a fraud or would result in other injustice. 517 So.2d at 662. The court explained:
Such injustice may be found where the promisor reasonably should have expected that his affirmative representations would induce the promisee into action or forbearance substantial in nature, and where the promisee shows that such reliance thereon was to his detriment.
517 So.2d at 662. The court went on to hold that this doctrine could apply to insurance contracts but found that the plaintiff had failed to prove that claim with the requisite clear and convincing evidence.
There is a fundamental difference, at once apparent, between the use of that promissory estoppel in McBride and the kind of estoppel asserted here. The McBride estoppel is limited to circumstances surrounding the acquisition or procurement of the very contract of insurance in the first instance, and before any claim on that coverage has been asserted. The kind of estoppel asserted here and in AIU, however, arises from events after the insurance contract has come into existence, after there has been an occurrence, and after a claim has been or is about to be made. The supreme court recognizes the possibility of a claim in the McBride circumstances, but not in the AIU facts or here.[1]
Bound as we are to follow the construction of the Claims Administration Statute in AIU, we conclude that the trial court incorrectly imposed coverage on a carrier where it had been expressly excluded by the policy. Because there is no possible basis for an estoppel under the facts and circumstances in this case, as a matter of law, we direct that on remand the trial court shall enter a final judgment declaring that there is no coverage under the subject policy for the claim in suit.
*637 REVERSED AND REMANDED WITH DIRECTIONS.
STONE, J., and DOWNEY, JAMES C., Senior Judge, concur.
NOTES
[1] The Hinestrosas' reliance on Cigarette Racing Team v. Parliament Ins. Co., 395 So.2d 1238 (Fla. 4th DCA 1981), is misplaced. That decision is of doubtful validity after AIU. Even if it clings to some remaining vitality, we fail to appreciate the prejudice claimed here by the Hinestrosas  that the carrier defended the underlying personal injury law suit for the period from the filing of that claim until the filing of the declaratory judgment action. They have not explained how that amounts to real prejudice.