LANDSHIRE FAST FOODS OF MILWAUKEE, INC., d/b/a
Granny's Homestyle Foods, Plaintiff-Appellant,†

v.

EMPLOYERS MUTUAL CASUALTY COMPANY, Defendant-
Respondent.

Court of Appeals

*No. 03–0896. Submitted on briefs September 25, 2003.—
Decided January 28, 2004.*

2004 WI App 29

(Also reported in 676 N.W.2d 528.)

† Petition to review denied 4-20-04.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Burton A. Strnad* of *Burton A. Strnad, S.C.*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jeffrey A. Schmeckpeper* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. SNYDER, J. Landshire Fast Foods of Milwaukee, Inc., d/b/a Granny's Homestyle Foods, appeals a summary judgment in favor of Employers Mutual Casualty Company. Landshire contends that the circuit court erred when it concluded that coverage for losses resulting from a bacterial outbreak was excluded under the Employers policy. We disagree and affirm the summary judgment.

## FACTS

¶ 2. Landshire prepares sandwiches and other foods for sale to businesses and institutions. In 1999, Landshire began delivering sandwiches to Great Lakes Naval Training Station commissary. On May 31, 2000, Great Lakes reported it had found bacteria, specifically Listeria monocytogenes, on some of Landshire's product. This form of Listeria can cause mild flu-like symptoms in healthy adults; however, in more vulnerable populations such as the elderly, this bacteria can produce a life-threatening illness with a twenty-five percent mortality rate. Great Lakes returned all of the food to Landshire and refused to accept any additional Landshire product.

¶ 3. The Wisconsin Department of Agriculture, Trade & Consumer Protection's Division of Food Safety (WDATC) and the Food and Drug Administration (FDA) began monitoring Landshire. The FDA conducted on-site inspections of Landshire's facilities in June 2000. Subsequently, Landshire entered into two voluntary compliance agreements requiring further recalls of Landshire's product from the marketplace.

¶ 4. Landshire retained Jeffrey Kornacki, a food microbiologist, to observe cleaning and sanitation practices and to test for possible sources of the Listeria.

Kornacki concluded that the Berkel slicer used by Landshire to cut meats was the "sole source of the Listeria contamination to the products."

¶ 5. On August 31, 2000, Landshire submitted a "Corrective Action Plan" to the FDA. Landshire declared that it would no longer use the Berkel slicer, but would buy presliced meat from outside venders. The plan also included new sanitizing practices, employee training sessions, and random testing of the products.

¶ 6. During this time, Landshire held a commercial property insurance policy issued by Employers. Landshire submitted claims for loss of income, loss of product, sanitizing expenses, and costs related to investigating the source of the bacteria. Employers denied all of Landshire's claims because they were not the result of a "covered cause of loss."

¶ 7. Landshire sought a declaratory judgment against Employers to compel coverage. Employers moved for summary judgment, and Landshire responded with its own motion for partial summary judgment. The circuit court determined that none of Landshire's claims for damages were compensable under the insurance policy and dismissed the complaint on the merits. Landshire appeals.

## DISCUSSION

*Standard of Review*

¶ 8. We review summary judgment motions de novo. *Blazekovic v. City of Milwaukee*, 225 Wis. 2d 837, 840, 593 N.W.2d 809 (Ct. App. 1999). Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a

matter of law. WIS. STAT. § 802.08(2).[1] We will reverse a decision granting summary judgment if either (1) the trial court incorrectly decided legal issues or (2) material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). Because both Landshire and Employers moved for summary judgment, we may assume the relevant facts regarding coverage are undisputed. *See Powalka v. State Mut. Life Assurance Co. of Am.*, 53 Wis. 2d 513, 518, 192 N.W.2d 852 (1972). The only dispute before us, therefore, involves interpretation of the Employers insurance policy.

¶ 9.   The interpretation of an insurance contract is a question of law that this court decides without deference to the trial court. *Meyer v. Mich. Mut. Ins. Co.*, 2000 WI App 37, ¶ 8, 233 Wis. 2d 221, 607 N.W.2d 333. Summary judgment is proper and will be upheld on review when only a question of law is presented. *Hubbard v. Messer*, 2003 WI 145, ¶ 7, 267 Wis. 2d 92, 673 N.W.2d 676. Having determined that only a question of law remains, we turn our attention to whether the trial court correctly decided the legal issues.

*Interpretation and Application of Policy Provisions*

¶ 10.   Landshire raises three issues on appeal. First, Landshire asserts that the pollution exclusion in the Employers policy does not include bacteria and therefore cannot be invoked to exclude coverage for the Listeria outbreak. Landshire further argues that although Employers' policy excludes losses caused by faulty maintenance, government order, or loss of mar-

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

ket, these policy exclusions do not apply to Landshire's claim. Finally, if we determine that none of the policy exclusions apply and that Landshire's losses resulted from a covered cause, Landshire asks us to address whether the cost of identifying and eradicating the source of the Listeria should be covered under Employers' extra expense provision.

¶ 11. We examine the language of the policy and employ specific principles to determine whether coverage exists.

> In Wisconsin, the construction of contracts of insurance should be made with an aim toward effecting the true intent of the parties and the extent of policy coverage. The test "is not what the insurer intended the words to mean but what a reasonable person in the position of the insured would have understood them to mean." When a policy is clear and unambiguous on its face, the terms of that policy should not be rewritten by construction to bind an insurer to a risk it never contemplated or was willing to cover, and for which it was never paid. However, when the terms of the policy are ambiguous or obscure, the policy must be strictly construed against the drafter of the policy, the insurance company. Words or phrases in a contract are ambiguous when they are "reasonably or fairly susceptible to more than one construction."

*Richland Valley Prods., Inc. v. St. Paul Fire Cas. Co.*, 201 Wis. 2d 161, 167–68, 548 N.W.2d 127 (Ct. App. 1996) (citations omitted). With these principles in mind, we will address the pollution exclusion first.

¶ 12. Employers' Building and Personal Property Coverage provisions state that the insurer will provide coverage for "direct physical loss of or damage to

Covered Property . . . caused by or resulting from any Covered Cause of Loss." The policy thus requires both a covered cause of loss and direct physical loss or damage to Landshire's property. The policy includes a Causes of Loss—Special Form, which states:

### A. COVERED CAUSES OF LOSS

. . . Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1. Excluded in Section **B.**, Exclusions; or

2. Limited in Section **C.**, Limitations; that follow.

### B. EXCLUSIONS

1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

      . . . .

2.  Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss . . . ."[2]

¶ 13.   The policy defines pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The parties disagree on the scope

---

[2] The policy provides that "Specified Causes of Loss" means the following:   Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

of the term "contaminant." While Landshire concedes that Listeria is a contaminant, it denies that Listeria is the "kind of contaminant Employers' policy excludes from coverage." Asserting that Employers' policy language "only excludes inorganic matter," Landshire seems to invoke *ejusdem generis,* a rule of statutory construction that limits nonenumerated losses to those of the same kind, class, character, or nature as the given examples. *See State v. Ambrose,* 196 Wis. 2d 768, 777, 540 N.W.2d 208 (Ct. App. 1995). Landshire further argues that all provisions tending to limit coverage must be most strongly construed against the insurer. *Hartland Cicero Mut. Ins. Co. v. Elmer,* 122 Wis. 2d 481, 487, 363 N.W.2d 252 (Ct. App. 1984).

¶ 14. However, rules of construction are not used when a contract is unambiguous, but only when ambiguous. *See Jones v. Sears Roebuck Co.,* 80 Wis. 2d 321, 329–30, 259 N.W.2d 70 (1977). Ambiguity exists if the words or phrases of the policy are susceptible to more than one reasonable interpretation. *Meyer,* 233 Wis. 2d 221, ¶ 9. We determine whether Employers' policy language is ambiguous by considering what a reasonable insured in the position of Landshire would have understood the policy to mean. *See id.,* ¶ 8.

¶ 15. The dispositive issue is whether there is more than one reasonable interpretation of the term "contaminant" as used in Employers' pollution exclusion. Employers points to this court's previous determination that the essence of a pollution exclusion is that "there is no coverage for the contamination of [a company's products] by any substance foreign to those products." *U.S. Fire Ins. Co. v. Ace Baking Co.,* 164 Wis. 2d 499, 505, 476 N.W.2d 280 (Ct. App. 1991). More recently, we have stated that:

> [C]ontamination "connotes a condition of impurity resulting from mixture or contact with a foreign substance," and that it means "to make inferior or impure by mixture; an impairment of impurity; loss of purity resulting from mixture or contact," a definition the court found consistent with common understanding and WEBSTERS NEW INTERNATIONAL DICTIONARY. Even if exclusions from all-risk policies are construed narrowly and in favor of the insured, the term "contamination" is plain.

*Richland Valley Prods.*, 201 Wis. 2d at 169–70 (citations omitted).

■

¶ 16.  Discussing *Richland Valley Products*, a federal court observed that "[a]lthough various forms of matter can constitute contamination, the term is not itself reasonably susceptible to multiple meanings." *J.L. French Auto. Castings, Inc. v. Factory Mut. Ins. Co.*, 2003 WL 21730127 (N.D. Ill. July 23, 2003). The presence of Listeria monocytogenes in Landshire's food products plainly rendered the food unfit for consumption, and as such meets the ordinary, unambiguous definition of "contamination." Landshire's proposition —that the term "contaminant" in the policy definition of "pollutant" included only "inorganic matter"—is therefore unreasonable and does not render the language ambiguous. A policy term is not ambiguous merely because the parties disagree as to its meaning. *Richland Valley Prods.*, 201 Wis. 2d at 169.

¶ 17.  We hold that the term "contaminants" in Employers' pollution exclusion, when given its plain meaning, incorporates bacteria such as Listeria monocytogenes. We decline Landshire's request to apply the rule of *ejusdem generis* or otherwise rewrite the policy because we have concluded that the language of Em-

ployers' insurance policy is unambiguous. *See id.* at 173 (holding that the contamination exclusion was neither overly broad nor ambiguous, we determined that the *ejusdem generis* rule was inapplicable). Accordingly, the Employers insurance policy excludes coverage for any loss or damage caused directly or indirectly by the Listeria contamination.

¶ 18. We need not address the applicability of the alternate exclusions invoked by the trial court. Because the pollution exclusion applies, it is irrelevant whether the faulty maintenance, government order, or loss of market exclusions also apply. Furthermore, the policy's extra expense provision, which covers necessary expenses incurred during a "period of restoration," applies to expenses arising from a covered cause of loss. Because we have determined that this event did not arise from a covered cause of loss, the extra expense coverage is not available.

## CONCLUSION

¶ 19. The meaning of the term "contaminant" in an insurance contract pollution exclusion is well settled in Wisconsin. The term is not susceptible to multiple interpretations. Bacteria, such as Listeria monocytogenes, when it renders a product impaired or impure, falls squarely within the plain and ordinary meaning of "contaminant." Landshire's claims for loss or damage caused by the Listeria are therefore excluded and the summary judgment in favor of Employers is affirmed.

*By the Court.*—Judgment affirmed.