**NOVA CASUALTY COMPANY**
Plaintiff

v.

**Richard WASERSTEIN,
et al. Defendants**

**No. 04–20755 CIV JORDAN.**

United States District Court,
S.D. Florida,
Miami Division.

March 24, 2006.

Wayne T. Gill, Esq., Walton Lantaff, West Palm Beach, FL, for Plaintiff.

Jacob J. Givner, Esq., Bay Harbor Islands, Robert J. McKee, Krupnick Campbell Malone Roselli, et al., Fort Lauderdale, for Defendants.

## Order on Motion and Cross-Motion for Summary Judgment

JORDAN, District Judge.

Nova Casualty Company moves for summary judgment on Count I of its second amended complaint for declaratory relief, and Richard Waserstein's and 1108 Concourse, L.C.'s ("1108") affirmative defenses. Mr. Waserstein and 1108 filed a cross-motion for summary judgment on Count I, and oppose Nova's motion for summary judgment only as to their affirmative defense of promissory estoppel. For the following reasons, Nova's motion for summary judgment [D.E. 78] is GRANTED IN PART. It is GRANTED as to Count I, and DENIED as to the affirmative defense of promissory estoppel. Mr. Waserstein's and 1108's cross-motion for summary judgment [D.E. 87] is DENIED.

Nova also moves for summary judgment on 1108's and Mr. Waserstein's affirmative defenses of failure to state a claim and lack of subject matter jurisdiction. 1108 and Mr. Waserstein do not oppose Nova's motion in this regard. Therefore, Nova's motion for summary judgment on the affirmative defenses of failure to state a claim and lack of subject-matter jurisdiction [D.E. 78] is GRANTED.

The only other count in Nova's complaint, Count II, seeks a declaration that it has no duty to indemnify Mr. Waserstein in connection with the battery claim in the underlying state court suit. Nova concedes that Count II is moot because the battery claim against Mr. Waserstein was dismissed in the underlying state court suit. See Nova's Motion for Summary Judgment ("Sum. J. Mot.") at 2. I interpret this as a voluntary dismissal of Count II in Nova's second amended complaint, see Rule 41(a)(2), and thus, Count II is DISMISSED WITHOUT PREJUDICE.

## I. FACTS

On summary judgment, the facts must be read in the light most favorable to the non-moving parties, Mr. Waserstein and 1108. See Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220, 1225 (11th Cir.1999). With that standard in mind, the facts are as follows.

### A. THE UNDERLYING STATE COURT SUIT AND POLLUTION EXCLUSION CLAUSE

1108 owns an office building located in Miami, Florida, and Mr. Waserstein is a managing member of 1108. See Deposition of Richard Waserstein ("Waserstein Depo.") [D.E. 96] at 4–5; Affidavit of Richard Waserstein in Opposition to Nova's Motion for Summary Judgment ("Waserstein Aff.") [D.E. 84] at ¶ 1. Eight plaintiffs filed suit in Florida circuit court against Mr. Waserstein, 1108, two parties that did construction, repair, and maintenance work in the building, and Bank of America Corp., a tenant in the building. See Second Amended Complaint of Marlene Barnett in Marlene Barnett v. Trammel Crow Servs., Inc., et. al., Case No. 03–14301 CA 20 (Fla. 11th Jud. Cir.) ("St.Ct.Compl.") at ¶¶ 3–12, att'd as Ex. 1 to Sum. J. Mot. Each of the eight plaintiffs were employees of Bank of America, and are the other defendants in this declaratory judgment action.

The underlying complaints contain identical allegations and negligence claims

against 1108 and Mr. Waserstein.[1] The complaints allege that, due to the negligence of 1108 and Mr. Waserstein, the eight plaintiffs in the underlying suit were physically injured by exposure to the following while working for Bank of America inside the building:

- "expos[ure] to harmful chemicals and living organisms" (*Id.* at ¶ 13);
- "hazardous particles and chemicals" (*Id.* at ¶¶ 38, 39, 40, 41 d, 46, 47, 48, 49 d);
- "hazardous particles and chemical toxicants" (*Id.* at ¶¶ 41 b, 49 b);
- "dangerous chemicals, particulates and microbial populations" (*Id.* at ¶¶ 40, 48);
- "indoor allergens" (*Id.* at ¶¶ 42 d, 50 d);

and

- "airborne and microbial contaminants" (*Id.* at ¶¶ 42 b, c, d, 50 b, c, d).

The complaints also allege claims for battery against 1108 and Mr. Waserstein, but the state court has dismissed them. *See* Sum. J. Mot. at 2.

Nova issued a general commercial liability insurance policy to 1108. Count I of Nova's complaint seeks a declaration that Nova has no duty to defend or indemnify 1108 or Mr. Waserstein in the underlying suit because the pollution exclusion clause in the policy excludes coverage for the causes alleged in the underlying suit. The policy has a coverage provision which sets out Nova's duty to defend and indemnify:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Commercial General Liability Coverage Form at 1, att'd as Comp. Ex. 9 to Sum. J. Mot. A subsequent provision, commonly referred to as an "absolute pollution exclusion clause," limits Nova's duty to defend and indemnify:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time.

Total Pollution Exclusion Endorsement at 1, att'd as Comp. Ex. 9 to Sum. J. Mot. The policy also defines "pollutants":

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

Commercial General Liability Coverage Form at 12.

### B. REPRESENTATIONS RELATING TO THE ESTOPPEL DEFENSE

Some time before he purchased the office building on January 28, 2000, Mr. Waserstein called Combined Underwriters of Miami, Inc., and inquired as to the availability of an insurance policy that would provide "full coverage" to the office building. *See* Waserstein Depo. at 5–9. He specified that both he and Bank of America planned to do renovations in the

---

1. I cite only to the allegations as they appear in Ms. Barnett's complaint because they are identical in relevant parts to the allegations in the other seven complaints.

building, and that he did not want any problems relating to the renovation to arise. *See id.* at 9–12. Combined promised Mr. Waserstein that it would provide him with a policy where "everything [he] needed it to cover, it was covered." *See id.* at 12. The building was purchased on January 28, 2000. *See id.* at 10–11.

Combined helped Mr. Waserstein obtain an insurance policy to cover the period from January 28, 2000 to January 28, 2001. *See id.* at 6–7. The insurer for this first period was either Underwriters at Lloyd's, London, or Nova. *See id.;* Waserstein Aff. at ¶ 7; Deposition of Georgina Lopez ("Lopez Depo.") [D.E. 98] at 10–13. This policy was renewed for the period of January 28, 2001 to January 28, 2002. *See* Waserstein Depo. at 7, 15; Lopez Depo. at 12–13. Another policy was issued for the period of January 28, 2002, to January 28, 2003. That policy was then renewed for the period of January 28, 2003 to January 28, 2004. *See* Waserstein Depo. at 20; Lopez Depo. at 15, 38. There is no dispute that the policy covering the third period, and its renewal, were issued by Nova. *See* Waserstein Depo. at 20; Lopez Depo. at 15, 38.

At some time during the third period (January 28, 2002 to January 28, 2003), while the building was insured by Nova, Mr. Waserstein contacted Combined again to inquire as to the scope of coverage. *See* Waserstein Depo. at 16; Mr. Waserstein's Responses to Nova's Interrogatories ("Waserstein Ans. to Interogs.") at ¶ 9 a, att'd Ex. 24 to Sum. J. Mot; 1108's Responses to Nova's Interrogatories ("1108 Ans. to Interogs.") at ¶ 9 a, att'd Ex. 22 to Sum. J. Mot. Mr. Waserstein reiterated that both he and Bank of America were planning on doing renovations and construction in the building, and that he needed full or complete coverage. *See id.* He specifically asked whether he needed to purchase additional coverage for the office

building. *See id.* Combined's representative reassured him that he did not need any additional coverage and that he would be fully covered. *See id.* at 23, 25. But for Combined's representations to him, Mr. Waserstein would not have allowed the construction and renovation to begin. *See* Waserstein Aff. at ¶ 15; Waserstein Ans. to Interogs. at ¶ 9 g; 1108 Ans. to Interogs. at ¶ 9 g. After speaking with Combined's representative, Mr. Waserstein allowed the renovation to start, and it then began some time later in 2002. *See* Waserstein Depo. at 16, 25–26; Waserstein Ans. to Interogs. at ¶ 9 a, f; 1108 Ans.-to Interogs. at ¶ 9 a, f. The plaintiffs in the underlying suit allege injuries arising from the renovation. *See* St. Ct. Compl. at ¶ 7.

I do not resolve the factual dispute over whether Lloyd's or Nova was the insurer during the first two periods (January 28, 2000 to January 28, 2002) because this fact is not material to the estoppel defense. Mr. Waserstein's and 1108's estoppel defense can survive summary judgment even if the first policy, and its subsequent renewal, were issued by Lloyd's, rather than Nova. I recognize that the evidence Mr. Waserstein presents on *when* Combined's representative made the second representation, and *when* renovations commenced, is on shaky ground. During his deposition, Mr. Waserstein testified:

Mr. Gill: What was the first time that any of that construction work commenced?

Mr. Waserstein: I don't recall the exact date.

Mr. Gill: Do you know the year?

Mr. Waserstein: 2001, I believe, but I don't really know.

. . . . .

Mr. Gill: Did you have any conversations or communications of any kind

with Combined Underwriters before the policy was renewed for the second year? Mr. Waserstein: I had a conversation with them before I started construction. I don't remember if that was in the first year or the second year *or third year,* but I know I spoke to them again before I started construction.

Waserstein Depo. at 15, 15–16 (emphasis added). Reading the evidence in the light most favorable to Mr. Waserstein and 1108, I find that the italicized testimony is sufficient evidence (for summary judgment purposes) that the second representation took place during the third period (January 28, 2002, to January 28, 2003), a period which the building was indisputably insured by Nova. Moreover, Mr. Waserstein and 1108 answered their interrogatories by stating: "the content of the representation was that the *existing policy with Nova* Casualty Company would provide coverage." *See* Waserstein Ans. to Interrogs. at ¶ 9 a; 1108 Ans. to Interrogs. at ¶ 9 a (emphasis added). Mr. Waserstein may have been mistaken, and the representation may have concerned the previous Lloyd's policy. But reading the answer in the light most favorable to Mr. Waserstein and 1108, the second representation took place during the third period. Moreover, the only evidence of when the renovations commenced is that they commenced after Combined's second representation. *See id.* at 25–26. Thus, the renovations necessarily commenced at some point during the third period, while the building was insured by Nova.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1225 (11th Cir.1999). Thus, the task is to determine whether, considering the evidence in the light most favorable to the non-moving party, there is evidence on which a trier of fact could reasonably find a verdict in its favor. *See Hilburn,* 181 F.3d at 1225; *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997).

## III. ANALYSIS

### A. APPLICABLE STATE LAW

■ This case is here on the basis of diversity jurisdiction. Therefore, I must look to Florida's choice of law rules to determine the law applicable to this action. *See Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins.,* 165 F.Supp.2d 1332, 1335 (S.D.Fla.2001) (citing *LaFarge Corp. v. Travelers Indem.,* 118 F.3d 1511, 1515 (11th Cir.1997)). Under Florida's choice of law rules, *lex loci contractus* applies in contract matters, unless a statute modifies or abrogates a choice-of-law rule. *See Prime Ins. Synd. v. B.J. Handley Trucking, Inc.,* 363 F.3d 1089, 1091 (11th Cir. 2004) (citations omitted). That is, interpretation of a contract is governed by the law of the jurisdiction where the contract was executed. *See id.* at 1091 n. 1. The parties do not dispute that Florida law applies to the interpretation of the insurance contract at issue, as the policy was

issued and delivered to 1108, a Florida company, in Florida.

### B. Count I: Applicability of the Pollution Exclusion Clause

#### 1. The Duty to Defend

 Nova argues that it is entitled to summary judgment declaring that it has no duty to defend or indemnify the defendants in the underlying suit. The duty to defend is broader than the duty to indemnify, and thus, where the insurer has no duty to defend, it necessarily has no duty to indemnify. *Fun Spree Vacations, Inc. v. Orion Ins.*, 659 So.2d 419, 421 (Fla. 3d DCA 1995); *Fed. Ins. v. Applestein*, 377 So.2d 229, 231 (Fla. 3d DCA 1979). Because I find that Nova has no duty to defend 1108 or Mr. Waserstein, it has no duty to indemnify them either.

 In discussing when the duty to defend arises under Florida law, the Eleventh Circuit has stated:

> The duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured. The duty arises when the relevant pleadings allege facts that fairly and potentially bring the suit within policy coverage. The actual facts of the situation are not pertinent. Thus, the duty to defend is broader than the duty to indemnify in the sense that the insurer must defend even if facts alleged are actually untrue or legal theories unsound. If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured.

*Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) (citations and quotation marks omitted). I must therefore determine if the underlying complaints allege facts and legal theories that are covered under the policy. Where a complaint alleges multiple grounds for liability, with at least one claim being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit. *See Baron Oil Co. v. Nationwide Mutual Fire Ins.*, 470 So.2d 810, 813–14 (Fla. 1st DCA 1985) (citations omitted). If the complaint's allegations leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured, requiring the insurer to defend. *See id.* at 814 (citations omitted).

Thus, in determining whether an insurer has a duty to defend, the material facts are the allegations of the underlying complaints. Those material facts are not in dispute. The underlying complaints allege some facts that are indisputably excluded from coverage. The complaints allege that Mr. Waserstein and 1108 negligently exposed the plaintiffs in the underlying suit to "harmful chemicals," "hazardous particles and chemicals," "hazardous particles and chemical toxicants," and "dangerous chemicals [and] particulates." St. Ct. Compl. at ¶¶ 13, 38, 39, 40, 41 b, d, 47, 48, & 49 b, d. Mr. Waserstein and 1108 do not dispute that, pursuant to the pollution exclusion clause, there is not even potential coverage for these alleged causes.

The complaints, however, allege a second set of causes over which the parties are in dispute. The complaints allege that Mr. Waserstein and 1108 negligently exposed the plaintiffs in the underlying suit to "living organisms," "microbial populations," "airborne and microbial contaminants," and "indoor allergens." St. Ct. Compl. at ¶¶ 13, 40, 42 b, c, d, 48, 50 d. If this set of causes are not excluded from coverage, then there is "one claim being within the insurance coverage," and the "insurer is obligated to defend the entire suit." *Baron Oil Co.*, 470 So.2d at 813–14.

But if this set of causes are also excluded from coverage, then there is not even a single covered cause alleged in the underlying complaints, and Nova has no duty to defend either Mr. Waserstein or 1108 in the underlying suits. This requires an interpretation of the insurance policy, which, under Florida law, is a matter of law for the court. *See Adelberg v. Berkshire Life Ins.*, 97 F.3d 470, 472 (11th Cir.1996). Thus, I turn to see if "living organisms," "microbial populations," "airborne and microbial contaminants," and "indoor allergens" are excluded from coverage under the policy.

## 2. INTERPRETING THE POLLUTION EXCLUSION AND DEFINITION OF "POLLUTANT"

 Under Florida law, "insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Prudential Prop. & Cas. Ins. v. Swindal*, 622 So.2d 467, 470 (Fla.1993). *See also Rigel v. Nat'l Cas. Co.*, 76 So.2d 285, 286 (Fla.1954); *State Farm Fire & Cas. Ins. v. Deni Assocs.*, 678 So.2d 397, 400 (Fla. 4th DCA 1996), *aff'd* 678 So.2d 397 (Fla.1996). Thus, "where the language in a policy is plain and unambiguous, there is no special construction or interpretation required, and the plain language of the policy will be given the meaning it clearly expresses." *Fla. Farm Bureau Ins. v. Birge*, 659 So.2d 310, 312 (Fla. 2d DCA 1994). If an exclusionary clause in an insurance contract "is ambiguous or otherwise susceptible to more than one meaning, [it] must be construed in favor of the insured[.]" *State Farm Auto. Ins. v. Pridgen*, 498 So.2d 1245, 1248 (Fla.1986). But there must be a "genuine inconsistency, uncertainty or ambiguity in meaning...after resort to the ordinary rules of construction," before an exclusionary clause is construed in favor of the insured. *Id.* Courts may not "rewrite contracts, add meaning that is not present,

or otherwise reach results contrary to the intentions of the parties." *Id.*

*Deni Assocs. v. State Farm Fire & Cas.*, 711 So.2d 1135 (Fla.1998), is the closest Florida authority addressing pollution exclusion clauses and the definition of "pollutant." *Deni* rejected the insured's argument that pollution exclusion clauses only apply to industrial and environmental pollution because the clause at issue did not contain any such limiting language. *See id.* at 1138, 1139 ("We cannot accept the conclusion reached by certain courts that because of its ambiguity the pollution exclusion clause only excludes environmental or industrial pollution...We cannot place limitations upon the plain language of a policy exclusion simply because we may think it should have been written that way."). Thus, *Deni* broadly held that in determining whether something constitutes a "pollutant," a court should determine whether it fits the policy's definition of "pollutant," as the definition is understood in plain, ordinary language. *See, e.g., West American Ins. Co. v. Band & Desenberg*, 925 F.Supp. 758, 761–62 (M.D.Fla.1996) (refusing to limit pollution exclusion clause to "environmental" pollution because the clause does not contain any language limiting it in such a way) (relied upon by *Deni*); *American Home Ass. v. Devcon Int'l, Inc.*, 1993 WL 401872, *1, *3 (S.D.Fla.1993) ("Although the policy's definition of 'pollutants' does not include the word 'dusts' it does include 'any solid...irritant or contaminant.'").

Moreover, in concluding that "irritant" and "contaminant" are not ambiguous merely because they are not defined in the policy, *Deni* relied heavily on a passage from *American States Ins. v. Nethery*, 79 F.3d 473, 476 (5th Cir.1996). *Nethery* held that loss caused by paint and glue fumes were excluded from coverage, even though

paint and glue do not normally inflict injury. *See id.* at 476. The passage quoted in *Deni* states: "An irritant is a substance that produces a *particular* effect, not one that generally or probably causes such effects ... The paint and glue fumes that irritated Nethery satisfy both the dictionary definition and the policy exclusion of irritants." *Deni,* 711 So.2d at 1139 (*quoting Nethery,* 79 F.3d at 476). Thus, *Deni* supports the proposition that where the contract defines "pollutant" as an "irritant or contaminant," the court should look to see if the disputed substance is alleged to have had a *particular effect* commonly thought of as "irritation" or "contamination." *See, e.g., Tech. Coating Applicators, Inc. v. U.S. Fidelity & Guaranty Co.,* 157 F.3d 843, 845 (11th Cir.1998) ("the products' ability to produce an irritating *effect* place the products within the policies' definition of 'irritant.'") (emphasis added) (relying on *Deni*); *Auto–Owners Ins. v. Housing Auth.,* 121 F.Supp.2d 1365, 1368 (M.D.Fla.1999) (finding that losses caused by lead are excluded from coverage regardless of how the lead exits a wall, because the "determination of whether a substance is a pollutant or irritant is not determined by its use") (relying on *Deni's* interpretation of *Nethery*).

*Deni's* emphasis on the plain language of the policy and the actual effect of the injurious substance leads me to believe that the Florida Supreme Court would be persuaded by *Landshire Fast Foods v. Employers Mut. Cas. Co.,* 269 Wis.2d 775, 676 N.W.2d 528 (2004). In *Landshire,* the Wisconsin Supreme Court held that losses caused by bacteria were excluded from coverage by the policy's pollution exclusion clause. *See id.* at 784–85, 676 N.W.2d 528. The policy's definition of "pollutant" was identical to the definition here. *See id.* at 782, 676 N.W.2d 528. Like *Deni, Landshire* focused on the fact that the substance at issue, the bacteria, fell within the ordinary definition of a "contaminant," and had an effect commonly referred to as "contamination." *See id.* at 784, 676 N.W.2d 528 ("The presence of [the bacteria] in Landshire's food products plainly rendered the food unfit for consumption, and as such meets the ordinary, unambiguous definition of 'contamination.'"). Like *Deni, Landshire* refused to re-write the pollution exclusion so as to make it more limited than its plain language provided. *See id.* at 783, 676 N.W.2d 528 ("We decline to apply the rule of *ejusdem generis* or otherwise rewrite the policy because we have concluded the language...is unambiguous."). Moreover, *Landshire* is consistent with Florida's principle of insurance contract interpretation that plain meaning governs first and foremost. *See Swindal,* 622 So.2d at 470; *Rigel,* 76 So.2d at 286.

Like the bacteria in *Landshire,* "living organisms," "microbial populations," "microbial contaminants," and "indoor allergens" fit the ordinary definition of a "contaminant," and, as alleged in the underlying state court complaints, had a "contaminating" effect. The underlying complaints allege that the plaintiffs were injured because 1108 and Mr. Waserstein negligently failed to keep the air and surfaces in the building clean. *See* St. Ct. Compl. at ¶¶ 42, 44, 50, 52. They allege that these substances traveled from surfaces in the building, through the air, and came in contact with the plaintiffs, thereby causing physical injury, sickness, disease, and/or physical handicap. *See id.* Thus, these substances infected the plaintiffs' bodies or made them impure by contact, thereby fitting the ordinary meaning of a "contaminant," and having an effect commonly known as "contamination." *See* WEBSTER'S NEW WORLD COLLEGE DICTIONARY 314 (4th ed.2000) (defining "contaminate" as to "make impure, infected,

corrupt, radioactive, etc. by contact with addition of something;...”). Thus, under *Landshire,* these causes are excluded from coverage. *See, e.g., Landshire,* 269 Wis.2d at 785, 676 N.W.2d 528 (“Bacteria,...when it renders a product impaired or impure, falls squarely within the plain and ordinary meaning of ‘contaminant.’ ”).

### 3. Mr. Waserstein’s and 1108’s Arguments

Although I find that the plain meaning of the definition of “pollutant” includes “living organisms,” “microbial populations,” “microbial contaminants,” and “indoor allergens,” I address the arguments of Mr. Waserstein and 1108 to further illustrate the point.

They argue that the cases Nova relies on are distinguishable because the injury in each case “was unequivocally alleged to have been chemically induced.” Mr. Waserstein’s and 1108’s Response to Nova’s Motion for Summary Judgment & Cross–Motion for Summary Judgment (“Resp.”) [D.E. 87] at 8. I agree with Mr. Waserstein and 1108 to the extent that the cases Nova cites were easier to resolve because they involved contaminants that were specifically mentioned, or closely resembled, the items listed as “irritants or contaminants” in the typical pollution exclusion clause: smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. But none of those cases held—let alone suggested—that a contaminant must be expressly mentioned in the clause, or must closely resemble the contaminants listed, in order to be excluded from coverage.

Mr. Waserstein and 1108 also assert that “there is no separate definition of ‘irritant’ or ‘contaminant,’ but the policy expressly limits those terms to such items that are ‘solid, liquid, gaseous or thermal.’ ” Resp. at 9. There is authority supporting this argument. *See Keggi v.*

*Northbrook Prop. & Cas. Ins.,* 199 Ariz. 43, 13 P.3d 785, 789 (2000) (“We note that the Northbrook policies limit ‘pollutants’ to ‘irritants’ and ‘contaminants’ that are ‘solid, liquid, gaseous, or thermal.’ The water-borne bacteria alleged to have caused Keggi’s injury do not fit neatly within this definition. To the extent that bacteria might be considered ‘irritants’ or ‘contaminants’ they are *living, organic* irritants or contaminants which defy description under the policy as ‘solid, liquid, gaseous, or thermal’ pollutants.”); *Motorists Mutual Ins. v. Hardinger,* 131 Fed.Appx. 823, 828 (3d Cir.2005) (Ambro, J., concurring). I reject the argument, however, as inconsistent with Florida law. There is nothing in the plain meaning of the term “solid” that limits it to non-living, or non-organic irritants and contaminants. The dictionary definition of “solid” certainly does not preclude living or organic things from being described as “solid.” *See* WEBSTER’S NEW WORLD COLLEGE DICTIONARY 1364 (4th ed.2000) (defining “solid” as “tending to keep its form rather than to flow or spread out like a liquid or gas; relatively firm or compact[;]”); WEBSTER’S THIRD NEW INTERNATIONAL DICTIONARY 2169 (4th ed.1976) (defining “solid” as “marked by density or compactness: of uniformly close and coherent texture or consistency; not disintegrated, loose, or spongy[;]...being neither liquid nor gaseous.”); SHORTER OXFORD ENGLISH DICTIONARY 2915 (5th ed.2002) (defining “solid” as “of a material substance; of a dense or massive consistency; firmly coherent; hard and compact”).

Moreover, the dictionary definitions of “organism” and “microbe” support the view that they are solid objects. An “organism” is defined as any “individual animal, plant, bacterium, etc. having various parts or systems that function together as a whole to maintain life and its activi-

ties[;]" or "anything resembling a living thing in its complexity of structure or functions." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1016 (4th ed.2000). *See also* SHORTER OXFORD ENGLISH DICTIONARY 2915 (5th ed.2002) (defining "organism" as "an organized or organic system; a whole consisting of dependent and interdependent parts, resembling a living being"). A "microbe" is defined as a "microscopic organism; esp., any of the bacteria that cause disease; germ." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 909 (4th ed.2000). *See also* SHORTER OXFORD ENGLISH DICTIONARY 1768 (5th ed.2002) (defining "microbe" as "an extremely minute living organism, a micro-organism; esp. a bacterium that causes disease or fermentation"). These parts and systems, functioning together as a whole, ordinarily connote something that has some close and coherent texture or consistency, albeit microscopic in size, and thus, connote something "solid."

To interpret the pollution exclusion clause as *Keggi* and the concurrence in *Hardinger* suggest would re-write the definition of "pollutant" to read "non-living, non-organic solid, liquid, gaseous, or thermal irritant or contaminant," something Florida law prohibits. *See, e.g., Deni,* 711 So.2d at 1139 ("We cannot place limitations upon the plain language of a policy exclusion simply because we may think it should have been written that way."). For the same reason, I reject Mr. Waserstein's and 1108's argument that these causes are covered because the "Nova exclusion does *not* include, as well as it could have, 'bacteria, fungi, virus or hazardous substances' " listed in various federal environmental statutes, or because other pollution exclusion clauses, in other cases, have expressly excluded biological or organic causes. Resp. at 10–11 (emphasis in original). The fact that the definition of "pollutant" in Nova's policy could have been written differently

does not render it ambiguous. *See, e.g., Deni,* 711 So.2d at 1139.

Mr. Waserstein and 1108 also argue, by incorporating their expert's opinion, that the rule of *ejusdem generis* requires a ruling in their favor. *See* Resp. at 13. *Keggi* supports this argument as well. *See Keggi,* 13 P.3d at 789–90 (The "exclusion delineates the types of contaminants or irritants included within the definition of 'pollutants': 'smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste'...[U]nder the rule of *ejusdem generis,* any unlisted items that are construed to fall within the definition must be similar in nature to the listed items."). Finding that bacteria did not closely resemble the items listed, *Keggi* used the rule of *ejusdem generis* to conclude that "*the plain language* of the pollution exclusion does not include...bacteria within the definition of 'pollutants.' " *Id.* at 790 (emphasis added).

■ The problem is that a court applying Florida law would not employ the rule of *ejusdem generis* in such a manner. Under Florida law, a court is not permitted to use the rule of *ejusdem generis* to discern the plain language of a contract. It may only use the rule to construe the contract *after* it determines that the plain language of the contract is ambiguous. *See Jacobo v. Bd. of Trustees of the Miami Police,* 788 So.2d 362, 364 (Fla. 3d DCA 2001) ("The doctrine of *ejusdem generis* is applicable only where there is some ambiguity or inconsistency in the statute."); *Pottsburg Utilities, Inc. v. Daugharty,* 309 So.2d 199, 201 (Fla. 1st DCA 1975) (same rule, as applied to construction of a contract).

■ Moreover, the doctrine of *ejusdem generis* is inapplicable because the plain language of the pollution exclusion clause is *not* ambiguous. As discussed earlier, "living organisms," "microbial populations," "microbial contaminants," and "in-

door allergens" fit the ordinary meaning of "pollutants," and thus, there is no occasion to apply the rule of *ejusdem generis* in this case. *See Landshire,* 676 N.W.2d at 532–33 (refusing to apply *ejusdem generis* because definition of "contamination" is plain and unambiguous).

Mr. Waserstein and 1108 further contend that it is necessary to interpret the definition of "pollutant" in their favor because "the terms 'irritant' and 'contaminant,' without limitation, would essentially negate *all* coverage." Resp. at 9 (emphasis in original). Whatever the merit of their policy argument, the Florida Supreme Court has rejected it. *See Deni,* 711 So.2d at 1140 ("We see no reason to address what might be the holding under certain hypothetical situations...because none of those facts are before us. Suffice it to say that insurance policies will not be construed to reach an absurd result.").[2] *See also Tech. Coating Applicators, Inc.,* 157 F.3d at 846 ("[T]he policies continue to provide coverage for a wide variety of accidents and mishaps—such as injuries from falling equipment—that may occur during the roof repair process.").

## C. Affirmative Defense of Estoppel

 Nova also moves for summary judgment on 1108's and Mr. Waserstein's third and fourth affirmative defenses, which together raise the defense of promissory estoppel. Under Florida law, "the general rule in applying equitable estoppel to insurance contracts provides that estoppel may be used defensively to prevent a forfeiture of insurance coverage, but not affirmatively to create or extend coverage." *Crown Life Ins. v. McBride,* 517 So.2d 660, 661 (Fla.1987). The exception

to this rule is the doctrine of promissory estoppel, but it

> only applies where to refuse to enforce a promise...would be virtually to sanction the perpetration of fraud or would result in other injustice...Such injustice may be found where the promisor reasonably should have expected that this affirmative representations would induce the promisee into action or forbearance substantial in nature, and where the promisee shows that such reliance thereon was to his detriment.

*Id.* at 662. This is a very narrow exception to the general rule. *See AIU Ins. v. Block Marina Inv., Inc.,* 544 So.2d 998, 1000 n. 1 (Fla.1989).

 Nova first argues that Mr. Waserstein and 1108 cannot state a claim for estoppel because neither of the two representations that could support the estoppel defense were made in connection with the initial acquisition or procurement of the Nova policy. I reject this argument as inconsistent with Florida law. Neither case that Nova relies on holds that a representation must be in connection with the initial acquisition or procurement of the insurance contract in order to support an estoppel defense.

The first case, *State Farm Mut. Auto. Ins. v. Hinestrosa,* 614 So.2d 633, 635–36 (Fla. 4th DCA 1993), held that an insurer is not estopped from denying coverage on the basis of an exclusion in the insurance contract merely because the insurer did not comply with Florida's claims administration statute. The court then went on to distinguish *McBride.* The court did state that "[t]he *McBride* estoppel is limited to circumstances surrounding the acquisition or procurement of the very contact of insurance in the first instance, and before

---

**2.** Mr. Waserstein and 1108 do not argue that ruling in favor of Nova would be an "absurd result."

any claim on that coverage has been asserted." *Id.* at 636. But this is dicta. The court then immediately grounded its argument in the facts of the case before it: "The kind of estoppel asserted here...arises from events after the insurance contract has come into existence, after there has been an occurrence, and after a claim has been or is about to be made." *Id.*

The holding in the other case Nova cites, *Aetna Cas. & Sur. Co. v. Deluxe Systems, Inc.,* 711 So.2d 1293, 1296 (Fla. 4th DCA 1998), did concern *McBride,* and quoted the "initial acquisition" language in *Hinestrosa.* But then, like *Hinestrosa, Deluxe Systems* also grounded its holding to the specific facts of the case. Thus, the "initial acquisition" language in *Deluxe Systems* was also dicta. In fact, the Fourth District has explained that the "initial acquisition" language in *Hinestrosa* and *Deluxe Systems* which Nova relies on is dicta:

> The issue in *Hinestrosa* was whether the insurer was precluded from denying coverage because of the failure of the insurer to comply with a claims administration statute. *Hinestrosa* is accordingly distinguishable, and any language in *Hinestrosa* which would limit estoppel to conduct involved in the procurement of insurance must be read in light of the facts, as well as our supreme court's decision in *Doe,* which came after *Hinestrosa, Doe* makes it clear that estoppel to deny coverage can be based on conduct occurring after the insurer undertakes the defense of a claim.

*Family Care Center, P.A. v. Truck Ins. Exch.,* 875 So.2d 750, 753 (Fla. 4th DCA 2004).

Moreover, this case is distinguishable from the facts in *Hinestrosa* and *Deluxe Systems.* Indeed, like those cases, a representation supporting the estoppel defense in this case was made "after the insurance contract came into existence." *Hinestrosa,* 614 So.2d at 636. However, unlike those cases, the representation here was not made "after there has been an occurrence, and after a claim has been or is about to be made." *Id.* Thus, assuming that the *McBride* discussion was a part of *Hinestrosa's* holding, neither *Hinestrosa* nor *Deluxe Systems* require me to find, as a matter of law, that Nova is entitled to summary judgment on the estoppel defense.

Moreover, a number of Florida cases have held that a representation made *after* the policy is initially acquired or procured can support an estoppel defense. *See Exec. Health Servs. v. State Farm Fire & Cas. Co.,* 498 So.2d 1268, 1269 (Fla. 2d DCA 1986) (in action by insurer against insured seeking declaration that exclusion in policy permitted insurer to deny coverage, summary judgment for insurer was reversed because "a representation made after issuance of the policy and before the incident giving rise to a claim under the policy can estop the insurer from denying coverage"), *aff'd,* 520 So.2d 561, 561 (Fla. 1988) (expressly stating that decision below is consistent with *McBride* ). *See also Peninsular Life Ins. Co. v. Wade,* 425 So.2d 1181, 1182–83 (Fla. 2d DCA 1983); *Homrich v. American Chambers Life Ins.,* 594 So.2d 348, 350 (Fla. 5th DCA 1992). The Fourth District, which authored *Hinestrosa* and *Deluxe Systems,* is no exception. *See Kramer v. United Servs. Auto. Ass'n.,* 436 So.2d 935, 936, 937 (Fla. 4th DCA 1983).

■ Mr. Waserstein and 1108 have presented competent evidence that Combined's second representation to Mr. Waserstein occurred after a Nova policy was issued. The parties agree that a Nova policy insured the office building from January 28, 2002 to January 28, 2003. *See* Waserstein Depo. at 20; Lopez. Depo. at

15. At some time after this policy was issued, Combined assured Mr. Waserstein that he was fully covered from any liability that may arise during the course of the renovation. *See* Waserstein Depo. at 16, 23, 25; 1108 Ans. to Interogs. at ¶ 9 a, Waserstein Ans. to Interogs. at ¶ 9 a.

■ Moreover, this second representation can support Mr. Waserstein's and 1108's estoppel defense. After Combined made this representation, Mr. Wasterstein allowed the renovation to begin. *See* Waserstein Depo. at 16, 25–26, Waserstein Ans. to Interogs. at ¶ 9 a, f; 1108 Ans. to Interogs. at ¶ 9 a, f. He relied on this representation in allowing the renovation to begin because he would not have allowed it to start but for the representation. *See* Waserstein Aff. at ¶ 15; Waserstein Ans. to Interogs. at ¶ 9 g; 1108 Ans. to Interogs. at ¶ 9 g. Under Florida law, it is reasonable for an insured to rely on representations by the insurer that he is "fully covered," even where there is an applicable exclusion in the policy. *See, e.g., Exec. Health Servs.*, 498 So.2d at 1269–70. This reliance was clearly to Mr. Waserstein's and 1108's detriment, since he and 1108 are now faced with potential liability for injuries arising from the renovation.

Nova's second argument is that Mr. Waserstein and 1108 cannot state a claim for estoppel because they have not presented competent evidence in support of the "detrimental reliance" element of the defense. It argues that a portion of Mr. Waserstein's affidavit supporting this element is hearsay, and thus, cannot be accepted as evidence on summary judgment. In this portion of Mr. Waserstein's affidavit, he states that he was advised by several people selling insurance that there were a number of companies that would have provided broader pollution coverage than the Nova policy. *See* Waserstein Aff. at ¶ 13.

Even if I accept Nova's argument, Mr. Waserstein and 1108 have still presented competent evidence in support of the detrimental reliance element. According to Mr. Wasertein's affidavit, he relied to his detriment in another way: he went through with the renovations of the office building. *See id.* at ¶ 15 ("But for the representations of plaintiff's agent, upon which I totally relied, I would not have allowed any construction/renovations to take place."). *See also* Waserstein Ans. to Interogs. at ¶ 9 g; 1108 Ans. to Interogs. at ¶ 9 g. This second basis supporting the estoppel defense is not hearsay, and thus, is left untouched by Nova's argument. Florida law recognizes that the detrimental reliance element can be supported by evidence that the insurer's representation induced the insured to take action that he would not have taken but for the representation. *See, e.g., Homrich,* 594 So.2d at 350 (summary judgment in favor of insurer was reversed where, after policy was issued, insurer told insured that elective surgery would be covered under the policy, and based on that assurance, insured underwent the surgery).

■ Nova's third argument is that Mr. Waserstein and 1108 have not presented competent evidence showing that Combined, the party making the representations, was Nova's agent, and thus, was capable of binding Nova. However, Nova states that "[t]here is a factual dispute between the parties as to whether Combined Underwriters of Miami, Inc. was Nova's 'agent.' ... [W]hether Combined Underwriters was Nova's agent is a material issue of disputed fact..." Nova's Statement in Opposition to Mr. Waserstein's and 1108's Statement of Disputed Material Facts ("Nova's Stmt.") [D.E. 106] at ¶ 4. The existence of an agency relationship is normally a question of fact. *See Gillet v. Watchtower Bible & Tract. Soc.,*

913 So.2d 618, 620 (Fla. 3d DCA 2005). Nova has filed Ms. Kubek's affidavit, and Ms. Lopez's and Ms. Barrionuevo's depositions, in support of its position. Mr. Waserstein and 1108 have filed Mr. Waserstein's affidavit in support of their position. If the parties agree that these documents present a material issue of disputed fact, I will not step in and override their determination. *Cf.* S.D. Fla. Local Rule 7.5.D. ("All material facts set forth in the movant's statement filed and supported as required by Local Rule 7.5.C will be deemed admitted unless controverted by the opposing party's statement, provided the Court finds that the movant's statement is supported by evidence in the record."). Because Mr. Waserstein and Nova are the non-moving parties, I resolve this factual dispute in their favor, and assume that there is sufficient evidence Combined *was* Nova's agent. Thus, for purposes of this motion only, Combined bound Nova when Combined's representative told Mr. Waserstein in 2002 that he was fully covered.

An additional reason why I am not proceeding to decide Nova's motion on this issue is because it is not clear that Nova is actually moving for summary judgment on the ground that Combined was not its agent. Nova's agency argument first appears in its reply in support of its motion for summary judgment, and was not a part of its original motion for summary judgment. *See* Sum. J. Mot. at 12–15; Nova's Reply to Mr. Waserstein's and 1108's Resp. to Nova's Sum. J. Mot. [D.E. 95] at 8–9. It seems that in making the argument in its reply, Nova operated on the mistaken assumption that Mr. Waserstein's and 1108's cross-motion for summary judgment included the estoppel defense. Mr. Waserstein and 1108 filed a single memorandum where they cross-moved for summary judgment on Count I of Nova's second amended complaint, and opposed Nova's motion for summary judg-

ment on their estoppel defense. They labeled the portion of their memorandum discussing the estoppel defense as "Disputed Issues of Material Facts." Resp. at 15–16. But in its opposition to Mr. Waserstein's and 1108's statement of disputed facts, Nova states: "However, whether Combined Underwriters was Nova's agent is a material issue of disputed fact as to the Defendants' cross-motion for summary judgment..." Nova's Stmt. at ¶ 4. Thus, Nova's agency argument in its reply may be a response to what Nova thought was a cross-motion for summary judgment by Mr. Waserstein and 1108 on their estoppel defense. Moreover, it would be unfair to Mr. Waserstein and 1108 to decide Nova's motion on the agency issue alone, because the argument first appears in Nova's reply, and Mr. Waserstein and 1108 did not have a chance to respond in their opposition. *See, e.g.,* S.D. Fla. Local Rule 7.1.C ("The movant may...serve a reply memorandum in support of the motion, which reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition...").

## IV. Conclusion

The plain and ordinary language of the policy does not require Nova to defend Mr. Waserstein and 1108 in the underlying state court suit. The parties do not dispute that one set of alleged causes in the underlying complaints, pursuant to the pollution exclusion clause, are excluded from coverage. The other set of causes, "living organisms," "microbial populations," "airborne and microbial contaminants," and "indoor allergens" are contaminants, and are excluded from coverage under the pollution exclusion clause as well. Because Nova has no duty to defend under the policy, it necessarily has no duty to indemnify under the policy.

Nova, however, is not entitled to summary judgment on Mr. Waserstein's and 1108's affirmative defense of estoppel. There is competent evidence that, at some point after the Nova policy was issued, and before renovations in the building began, Nova's agent, Combined, told Mr. Waserstein that he was fully covered. Mr. Waserstein reasonably relied on this representation and allowed the renovations to begin. This was detrimental because, as a result of the renovations, Mr. Waserstein and 1108 are faced with potential liability in the underlying state court suit.

Thus, Nova's motion for summary judgment is GRANTED IN PART, and DENIED IN PART. Mr. Waserstein's and 1108's cross-motion for summary judgment is DENIED.